[No. S039627. Aug. 21, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDALL EUGENE HOFFARD, Defendant and Appellant.

## COUNSEL

Paul R. Irish, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—Penal Code section 1237.5 precludes a criminal defendant from appealing a conviction based on a guilty plea, on grounds going to the validity of the plea or the preplea proceedings, unless the defendant has filed with the trial court a statement of grounds for appeal and the trial court has issued a certificate of probable cause. The question presented here is whether, once the court has issued such a certificate, the defendant may raise on appeal cognizable issues other than those identified in the statement of grounds.

Randall Eugene Hoffard pled guilty to two counts of committing a lewd act with a child under fourteen years of age (Pen. Code, § 288, subd. (a)).[1] As to each count he also admitted an allegation he committed an act of substantial sexual conduct while occupying a position of special trust, making him presumptively ineligible for probation. (§ 1203.066, subd. (a)(9).) Asserting error in denial of his preplea motion to dismiss, defendant sought and obtained from the trial court a certificate of probable cause for appeal. On appeal he contended the trial court erred in accepting, as a factual basis for his admissions of substantial sexual conduct, his attorney's stipulation there was such a factual basis. The Court of Appeal agreed. The court ordered the case remanded for the trial court to determine from the record whether there was an adequate factual basis for defendant's admissions.

We conclude the factual-basis question was properly before the Court of Appeal, as defendant had correctly sought and obtained the certificate of probable cause required by section 1237.5. Nothing in section 1237.5 indicates the defendant must specify, and the trial court certify as nonfrivolous, each issue to be raised on appeal. Such a rule is unnecessary to the purposes of the statute and would be inefficient in operation.

We also conclude, however, that the Court of Appeal erred in its resolution of the factual-basis issue. Section 1192.5, upon which both defendant and the Court of Appeal relied, imposes on trial courts the burden of inquiry into a factual basis for a guilty plea only for *negotiated* pleas specifying the punishment to be imposed. Defendant's plea was made without conditions and hence was not subject to the requirements of section 1192.5. Because the trial court here had no duty to conduct an independent inquiry into the factual basis for defendant's plea, the court did not err in accepting counsel's stipulation such a factual basis existed. We will therefore reverse the judgment of the Court of Appeal in that respect.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with two counts of violating section 288, subdivision (a). As to each count it was further alleged defendant engaged in "substantial sexual conduct" with the victim while occupying a "position of special trust." These allegations, if admitted or proven, brought defendant within the presumptive bar on probation of section 1203.066, subdivision (a)(9), as it then read.[2]

According to evidence presented at the preliminary examination, defendant committed at least three lewd acts on his stepdaughter, Cecily R., while

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] As amended in 1994, section 1203.066, subdivision (a)(9) now relates to the use of obscene materials in violating section 288 or 288.5, while subdivision (a)(8) now precludes

they resided in San Jose.[3] On one occasion in her bedroom defendant pulled down her underwear and touched her vaginal area. On another occasion in defendant's car he unbuttoned her shorts and touched her vaginal area under her underwear. On one additional occasion, while he and Cecily were watching television, he touched her vagina.

On July 24, 1992, in superior court, defendant pleaded guilty as charged, without conditions or any promise as to sentence. Defendant was advised of and acknowledged understanding the possible consequences of his plea; he was also fully advised of, understood and expressly waived his constitutional trial rights. In addition to pleading guilty to both counts, defendant expressly admitted the section 1203.066 allegations.

The court asked defense counsel if he concurred in his client's plea and stipulated to a factual basis. Counsel answered affirmatively, further stating the factual basis could be found in the preliminary examination. The prosecutor also stipulated to a factual basis, and the court found "there [was] a sufficient factual basis for the plea."

At the sentencing hearing, defendant sought probation, contending the presumption of ineligibility had been rebutted.[4] Neither defendant, who testified at the hearing, nor his attorney denied the truth of the previously admitted charges or claimed any deficiency in the procedure in which defendant's plea and admissions were taken. In particular, neither defendant nor his attorney denied defendant engaged in substantial sexual conduct with Cecily, although counsel did dispute, in a sentencing memorandum, the probation officer's statement that vaginal penetration had occurred. The court denied probation and sentenced defendant to two concurrent six-year terms of imprisonment.

Defendant timely filed a notice of appeal and a "Written Statement in Support of Certificate of Probable Cause." The written statement, prepared and signed by trial counsel, identified only one potential issue for appeal: the denial of defendant's preplea motion to dismiss, in which defendant had contended the prior Placer County proceedings barred further prosecution on

---

probation for any violator of section 288 or 288.5 who has committed substantial sexual conduct with the victim. (Stats. 1994, ch. 447, § 3; Stats. 1994, First Ex. Sess. 1993-1994, ch. 14, § 3; Stats. 1994, First Ex. Sess. 1993-1994, ch. 60, §§ 3, 3.5.)

[3]Defendant previously had been separately charged with molesting Cecily in Placer County.

[4]Rebuttal is permitted under section 1203.066, subdivision (c), which provides that paragraphs (7), (8) and (9) of subdivision (a) do not apply if the sentencing court makes certain findings, including findings that rehabilitation of the defendant is feasible, that there is no threat of harm to the child if probation is granted, and that a grant of probation would be in the child's best interest.

the Santa Clara County offenses. The same day, the trial court filed the requested certificate of probable cause. The court, without identifying any issues, simply found "there is Probable Cause for Appeal . . . ."

Defendant's opening brief on appeal presented only one contention: "There was insufficient factual basis to support admission of Penal Code section 1203.066(a)(9) enhancing allegations." The People sought dismissal of the appeal, arguing defendant was precluded under section 1237.5 from raising the factual-basis issue because he had not specified that point in his statement of grounds for appeal.

The Court of Appeal rejected the People's position, concluding the issuance of a probable cause certificate, while a procedural prerequisite to defendant's appeal, did not determine the issues reviewable in the appeal. The court relied in part on the practical difficulties the People's proposed rule requiring specification of issues would create, noting "[i]t would be equally impractical either for trial counsel to anticipate all possible arguments on appeal at the time he or she files the section 1237.5 statement, or for a trial court to evaluate the efficacy of all possible arguments which might be made on appeal."

On the merits of the factual-basis issue, the Court of Appeal agreed with defendant that counsel's stipulation was inadequate, by itself, to establish the factual basis for the plea. The Court of Appeal examined the preliminary hearing transcript and, finding a lack of evidence of substantial sexual conduct, remanded to the trial court "to allow the prosecution the opportunity to establish a factual basis for appellant's admissions." We granted review on the People's petition.

I

Section 1237.5, in its entirety, provides: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk. [¶] This section shall become operative on January 1, 1992."

The People contend section 1237.5 should be interpreted to require the defendant to identify, and the trial court to certify, each nonfrivolous

issue for appeal. Pursuant to this interpretation, the appellate court would be precluded from entertaining any claims not identified in the defendant's statement and certified as nonfrivolous by the court.

Looking first to the language of the statute, we find no support for the People's construction. Section 1237.5 does not expressly limit the issues that may be raised on appeal once a certificate of probable cause has been obtained. Nor is any such limitation implied by the language of the statute. The law clearly requires the defendant to identify reasonable grounds for appeal in the trial court, but is silent on whether the defendant's statement limits the issues to be considered by the reviewing court.

To the extent any implication may be drawn from section 1237.5's language, it supports the interpretation adopted by the Court of Appeal. The statute provides that unless the required procedures are satisfied, "[n]o *appeal* shall be taken . . . ." (Italics added.) By its terms the statute thus determines only whether or not an appeal may be taken. Had the Legislature intended the certificate procedure to determine as well the particular issues reviewable on appeal, it presumably would have used language better adapted to that purpose, for example by providing that "no *issue* may be raised on appeal" from a guilty plea unless that issue had previously been presented to the trial court in the required statement and had been certified as nonfrivolous by the court.

We also note the statute requires the defendant's *statement*, but not the trial court's *certificate*, to state grounds for appeal. The trial court, that is, is not required to certify particular issues, but only the existence of "probable cause for such appeal." The People's interpretation of the certification process as a mechanism to screen each potential appellate issue would require us to read into the law a requirement that the trial court certify particular issues.

We look next to the purposes of the statute. Consistent with the statutory language, our past holdings also suggest the statute was not intended as a means of limiting the issues reviewable on appeal once the trial court has issued a certificate of probable cause. Both before and after the original enactment of section 1237.5, the issues cognizable on appeal from a guilty plea conviction were limited.[5] A guilty plea admits every element of the crime and constitutes a conviction. (*People* v. *Laudermilk* (1967) 67 Cal.2d

---

[5]The current version of section 1237.5 is substantially the same as that originally enacted in 1965. (Stats. 1965, ch. 1924, § 2, p. 4445.) Section 1237.5 was amended in 1988 to eliminate trial court certification, requiring only a statement of grounds by defendant. By its own terms that version was repealed effective January 1, 1992, and the pre-1988 version restored. (Stats.

272, 281 [61 Cal.Rptr. 644, 431 P.2d 228]; *People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881].) For that reason, and without regard to section 1237.5, issues going to the determination of guilt or innocence are not cognizable on appeal; review is instead limited to issues going to the jurisdiction of the court or the legality of the proceedings, including the constitutional validity of the plea. (*People* v. *Ribero* (1971) 4 Cal.3d 55, 63 [92 Cal.Rptr. 692, 480 P.2d 308]; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895-896 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Laudermilk, supra,* 67 Cal.2d at pp. 281-282.)[6]

■ "The impact of section 1237.5 relates to the procedure in perfecting an appeal from a judgment based on a plea of guilty, and not to the grounds upon which such an appeal may be taken." (*People* v. *Ribero, supra,* 4 Cal.3d at p. 63, fn. omitted.) Section 1237.5 does not restrict the scope of inquiry into a cognizable error once a certificate has been issued. (4 Cal.3d at p. 62.) By the same token, filing a certificate cannot expand the scope of review to include a noncognizable issue. (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028]; *People* v. *DeVaughn, supra,* 18 Cal.3d at p. 896; accord, *People* v. *Castro* (1974) 42 Cal.App.3d 960, 965 [117 Cal.Rptr. 295] [certificate "does not provide grounds for appeal or determine the issues which are reviewable"].)

In *People* v. *Ribero, supra,* we rejected the contention section 1237.5 deprived a defendant of due process by allowing the trial court to determine whether its own actions gave cause for reversing the judgment. We held the statute did not give the trial court that authority, but only required it to determine "whether the appeal is clearly frivolous and vexatious . . . ." (4 Cal.3d at p. 63, fn. 4.) In a later case, we elaborated on the trial court's role: "It is not the trial court's responsibility to determine if there was an error in the proceedings. The trial court's sole objective is to eliminate those appeals 'having no possible legal basis' by refusing to issue a certificate of probable cause. [Citations.]" (*People* v. *Holland* (1978) 23 Cal.3d 77, 84 [151 Cal.Rptr. 625, 588 P.2d 765].) The trial court must issue a certificate, we

---

1988, ch. 851, §§ 1-2, p. 2763; see *People* v. *Breckenridge* (1992) 5 Cal.App.4th 1096, 1098 [8 Cal.Rptr.2d 1].)

[6]Section 1538.5, subdivision (m), provides for appellate review of the validity of a search or seizure after a guilty plea. Issues relating to the court's postplea determination of the degree of the crime and the punishment to be imposed are also cognizable. (*People* v. *Ward, supra,* 66 Cal.2d at p. 575.) In addition, both these types of issues may be raised without obtaining a certificate of probable cause. (*Id.* at pp. 574-577; *People* v. *West* (1970) 3 Cal.3d 595, 600-601 [91 Cal.Rptr. 385, 477 P.2d 409]; see Cal. Rules of Court, rule 31(d).)

explained, if the defendant's statement presents "any cognizable issue for appeal which is not *clearly* frivolous and vexatious . . . ." (*Ibid.*)[7]

The purpose and effect of section 1237.5, therefore, are not to define the issues cognizable on appeal from a guilty plea, but to create a mechanism for trial court determination of whether an appeal raises *any nonfrivolous* cognizable issue, i.e., any nonfrivolous issue going to the legality of the proceedings. Before the enactment of section 1237.5, the mere filing of a notice of appeal required preparation of a record and, in many cases, appointment of counsel; only after expenditure of those resources would an appellate court determine whether the appeal raised nonfrivolous issues that fell within the narrow bounds of cognizability. Section 1237.5 was intended to remedy the unnecessary expenditure of judicial resources by preventing the prosecution of frivolous appeals challenging convictions on a plea of guilty. (*People* v. *Ribero*, *supra*, 4 Cal.3d at p. 62; *People* v. *Ward*, *supra*, 66 Cal.2d at p. 575.)

Most important, the interpretation of section 1237.5 urged by the People would not serve the statute's practical purposes of conserving judicial resources. The People's approach would require defendant or his trial attorney to identify and correctly characterize each issue that might possibly be raised on appeal. In order to avoid precluding appellate counsel from raising claims that might become apparent on examination of a full written record, knowledgeable trial attorneys would likely adopt a shotgun approach, including in their statements even marginal issues, phrasing the issues in the broadest possible terms and giving each possible issue multiple characterizations. Such statements would be of little assistance to trial courts.

Furthermore, the People's interpretation would impose an unnecessary burden on the trial courts by requiring them to consider and pass on numerous contentions, even when one issue clearly established the defendant's right to appeal. Section 1237.5 is intended as a practical way of economizing judicial resources by screening out wholly frivolous guilty plea appeals before time and money are spent preparing the record and the briefs for consideration by the reviewing court. The section is not intended to place on California's already overburdened trial courts the additional duty of exhaustively reviewing their own plea proceedings for error. (*People* v. *Ribero*, *supra*, 4 Cal.3d at p. 63, fn. 4; *People* v. *Holland*, *supra*, 23 Cal.3d at p. 84.)

---

[7]Although we have never decided whether a defendant may raise claims other than those identified in the section 1237.5 statement or certificate, we have assumed a defendant may do so. (See *People* v. *DeVaughn*, *supra*, 18 Cal.3d 889, 893-896; see also *People* v. *Geitner* (1982) 139 Cal.App.3d 252, 254-255 [188 Cal.Rptr. 486]; *People* v. *Haven* (1980) 107 Cal.App.3d 983, 985-986 [167 Cal.Rptr. 376].)

Finally, the People's approach would increase the use of petitions for writ of mandate to review trial courts' denial of probable cause certificates. Presently such a petition may be filed when the trial court has refused to issue a certificate. (See *In re Brown* (1973) 9 Cal.3d 679, 683 [108 Cal.Rptr. 801, 511 P.2d 1153].) If, as the People propose, the certificate were held to limit the reviewable issues, diligent defense counsel would be obliged also to petition for mandate when the trial court has certified some, but not all, of the claims identified in the written statement. Counsel would have to prepare, and the appellate court review, a record sufficient to determine the petition's merits. Again, section 1237.5's goals of efficiency and practicality would not be served.

The People rely on decisions requiring full or strict compliance with section 1237.5 on the ground that excusing noncompliance, while sometimes convenient for the appellate court, defeats the long-term purposes of the statute. (See, e.g., *People v. Patterson* (1984) 151 Cal.App.3d 252, 255-257 [198 Cal.Rptr. 585]; *People v. Pinon* (1979) 96 Cal.App.3d 904, 908-909 [158 Cal.Rptr. 425].) These cases are convincing but inapposite.[8] Here defendant did comply fully with section 1237.5. He timely filed the required written statement of grounds for appeal, and the trial court, evidently finding the appeal to be nonfrivolous, granted his application for a certificate of probable cause. Permitting the reviewing court to consider cognizable issues in addition to those identified in a defendant's written statement does not discourage trial counsel from complying with the statute, since only if the defense seeks and obtains a certificate can the appeal proceed at all.

The Court of Appeal, therefore, properly considered the factual-basis issue, even though it was not identified in trial counsel's statement of grounds for appeal.

## II

 The Court of Appeal erred in concluding the trial court conducted an insufficient inquiry into the factual basis for defendant's admissions of

---

[8]In both *Pinon* and *Patterson*, the notices of appeal stated the appeals would raise only sentencing issues. The appellants, without seeking or obtaining certificates of probable cause, then attempted to raise issues going to the validity of their pleas. The appellate courts correctly declined to hear those issues on the merits, as to do so would countenance an evasion of section 1237.5's screening process, effectively nullifying the statute. (*People v. Patterson, supra,* 151 Cal.App.3d at p. 257; *People v. Pinon, supra,* 96 Cal.App.3d at p. 909.) The same result obtained where the appellant sought but was denied a certificate to attack his plea, and did not challenge the denial by petition for writ of mandate but filed a notice of appeal specifying only sentencing issues. Upon receiving an opening brief addressing only the validity of the plea, the Court of Appeal correctly dismissed the appeal. (*People v. Castelan* (1995) 32 Cal.App.4th 1185, 1187-1189 [38 Cal.Rptr.2d 574].)

substantial sexual conduct. Under the circumstances of this case—a plea unconditioned upon receipt of a particular sentence or other exercise of the court's powers—the trial court had no duty to conduct such an inquiry.

The only authority cited by defendant or the Court of Appeal for a duty of inquiry is section 1192.5 and decisions applying that section. Section 1192.5, by its terms, concerns the procedure for taking a plea of guilty or nolo contendere that specifies "the punishment" to be imposed or "the exercise by the court . . . of other powers legally available to it." In other words, "[s]ection 1192.5 formalizes the procedures to be followed by the trial courts in dealing with negotiated pleas, commonly known as plea bargaining." (*People* v. *Johnson* (1974) 10 Cal.3d 868, 871 [112 Cal.Rptr. 556, 519 P.2d 604].)

The language of section 1192.5, read as a whole, unambiguously refers to conditional pleas. The first paragraph of section 1192.5 authorizes, for all but certain listed felonies, a plea of guilty, specifying the manner in which the court shall exercise its sentencing or other posttrial powers. The second paragraph provides that when "the plea" is accepted by the prosecutor and approved by the court, the defendant cannot be sentenced to a punishment more severe than that specified by the plea. The third paragraph, which contains the factual-basis requirement, sets out procedures to be followed "[i]f the court approves of the plea . . . ." The court must advise the defendant its approval is not binding and may be withdrawn at the time of sentencing, in which case the defendant will be permitted to withdraw his or her plea. The court must also conduct an inquiry to "satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea."

"[T]he plea" referred to in the third paragraph of section 1192.5 can only be the conditional plea made pursuant to the first paragraph and accepted and approved pursuant to the second paragraph. This grammatically compelled reading of the statute is reflected in this court's use, in *People* v. *Johnson, supra,* 10 Cal.3d at page 872, of a bracketed explanation in our quotation of section 1192.5, third paragraph: "Specifically, the section provides that: 'If the court approves of the [bargained for] plea, *it shall inform the defendant prior to the making of the plea* that (1) its approval is not binding . . . .'" (Brackets and italics in *Johnson.*) As indicated in this quote, "the plea" referred to in the third paragraph is the bargained-for plea that section 1192.5 as a whole was intended to govern.[9]

Conceding section 1192.5, "on its face," does not apply to unconditional pleas, including his own, defendant argues it should nonetheless be construed more broadly because, in his view, restriction to negotiated pleas has

---

[9]The Courts of Appeal have, in the same manner, read the third paragraph's factual-basis requirement as limited to negotiated pleas. Rejecting an attack on a prior misdemeanor

no rational basis. To the contrary, the Legislature's requirement of a factual-basis inquiry only for negotiated pleas is not an irrational or absurd distinction.[10] One of the primary reasons an innocent defendant might plead guilty is "the disparity in punishment between conviction by plea and conviction at trial." (Barkai, *Accuracy Inquiries for All Felony and Misdemeanor Pleas: Voluntary Pleas But Innocent Defendants?* (1977) 126 U. Pa. L.Rev. 88, 97 [hereafter *Accuracy Inquiries*].) Such a disparity is particularly likely to be a motivating factor for a plea when the charges expose the defendant to a potentially lengthy term or other severe punishment, and the prosecution offers substantially reduced punishment in exchange for a plea of guilty or no contest. The Legislature could rationally have believed this situation—a negotiated plea—creates an especially high risk the defendant will plead to a crime he or she did not commit and for which no factual basis can be established. Section 1192.5, third paragraph, is designed to protect against that result.

That section 1192.5, third paragraph, is inapplicable to unconditional guilty and no contest pleas does not leave the entry of such pleas unregulated. Section 1018, in capital cases, mandates the presence of counsel—a requirement of "transcendent importance under California law" (*In re Tahl* (1969) 1 Cal.3d 122, 128 [81 Cal.Rptr. 577, 460 P.2d 449])—and counsel's consent for entry of a guilty plea and, in noncapital felony cases, requires an unrepresented defendant to make an informed and explicit waiver of counsel before the plea may be entered. The federal Constitution further requires the plea be entered voluntarily and intelligently and that the record affirmatively reflect those conditions were met. (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1178 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) In order to ensure an adequate record, moreover, we have directed trial courts to give explicit admonitions as to the constitutional trial rights waived by a plea, to take the waivers explicitly and on the record, and to advise the defendant of the direct consequences flowing from the plea. (*Id.* at pp. 1178-1179; *In re Ronald E.*

---

conviction as invalid because of a claimed lack of factual basis for the plea, the court in *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 530 [145 Cal.Rptr. 636], explained that "Penal Code section 1192.5 pertaining to *plea bargains* in *felony cases* is the only statutory requirement in California that the court inquire to satisfy itself" of a factual basis. (Italics in original.) A concurring justice explained more fully: "Penal Code section 1192.5 is commonly thought to apply a factual basis rule to felonies. However, a careful reading would seem to limit it to plea bargain situations [citation]." (*Id.* at p. 533, fn. 2 (conc. opn. of Hopper, J.); see also *People* v. *Watts* (1977) 67 Cal.App.3d 173, 178 [136 Cal.Rptr. 496] [§ 1192.5 requires a factual-basis inquiry "upon a plea of guilty *which is part of a plea bargain*" (italics added)]; cf. § 1192.6, subd. (c) [prosecutor must state reasons for recommending punishment on guilty or no contest plea "whether or not that plea is entered pursuant to section 1192.5"].)

[10]The Legislature has also required the existence of a factual basis for a plea entered on the condition additional charges will be dismissed, where restitution relating to the dismissed charges may be ordered. (§ 1192.3, subd. (a).)

(1977) 19 Cal.3d 315, 320-321 [137 Cal.Rptr. 781, 562 P.2d 684].) These requirements apply equally to negotiated and nonnegotiated pleas.

Defendant does not contend the federal Constitution required an inquiry into the factual basis for his plea, and such a claim would have no merit. In federal criminal prosecutions, the court "should not" enter judgment on a plea of guilty "without making such inquiry as shall satisfy it that there is a factual basis for the plea." (Fed. Rules Crim. Proc., rule 11(f), 18 U.S.C.) There is, however, no federal *constitutional* requirement that a court, whether federal or state, inquire into the factual basis for a plea. "Judges must guard against the assumption that whatever is familiar is also essential. Putting a factual basis for the plea on the record has become familiar as a result of statutes and rules, not as a result of constitutional compulsion. The Constitution's standard 'was and remains whether the plea represents a voluntary and intelligent choice.' " (*Higgason* v. *Clark* (7th Cir. 1993) 984 F.2d 203, 207-208, quoting *North Carolina* v. *Alford* (1970) 400 U.S. 25, 31 [27 L.Ed.2d 162, 167-168, 91 S.Ct. 160]; accord, *U.S.* v. *Newman* (9th Cir. 1990) 912 F.2d 1119, 1123; *Ganyo* v. *Municipal Court, supra,* 80 Cal.App.3d at p. 530.)[11]

■ Conducting a factual basis inquiry before accepting or entering judgment on a guilty plea may further important interests, even where such an inquiry is not required by section 1192.5. In addition to constitutional considerations discussed in footnote 11, *ante,* these include protecting against the entry of a plea by an innocent defendant and making a record against possible appellate or collateral attacks on the plea. (*People* v. *Watts, supra,* 67 Cal.App.3d at p. 178; *Accuracy Inquiries, supra,* 126 U. Pa. L.Rev. at p. 95.) In light of these potential salutary effects, we approve of the

---

[11]Although not itself constitutionally compelled, a factual-basis inquiry may help to ensure the constitutional standards of voluntariness and intelligence are met. (See *North Carolina* v. *Alford, supra,* 400 U.S. at p. 38 [27 L.Ed.2d at p. 171] [evidence against defendant "provided a means by which the judge could test whether the plea was being intelligently entered"]; *Higgason* v. *Clark, supra,* 984 F.2d at p. 208 ["Putting the basis on the record not only helps the defendant make a wise choice but also prevents subsequent litigation in which the defendant denies knowing some vital bit of information."].) Ascertaining the existence of a factual basis assumes particular importance to the constitutional standard when the defendant's plea of guilty is coupled with a contradictory claim of innocence. (*North Carolina* v. *Alford, supra,* 400 U.S. at p. 38, fn. 10 [27 L.Ed.2d at p. 171].) No such claim was made in this case. Defendant expressly admitted, at the time of his plea, the allegations made pursuant to section 1203.066, subdivision (a). At sentencing defendant still did not contest his presumptive ineligibility for probation under that subdivision, contending instead that the presumption created by his admissions was rebutted under subdivision (c). He did not claim innocence either of the offenses charged or of the special allegation precluding probation.

practice, which we understand many trial courts follow, of attempting to ensure the existence of a factual basis for all guilty and no contest pleas.[12]

We nonetheless decline defendant's invitation to impose, as a new rule of criminal procedure, a duty for the trial court in all cases to establish on the record the existence and nature of the factual basis for a plea. In light of the existing constitutional and procedural protections for a pleading defendant, the current practice of our courts, and the likelihood a new rule would spawn additional appellate and collateral litigation over adequacy of the inquiry, we are persuaded of neither the need nor the wisdom of a new, court-made procedural rule.

Defendant's plea in this case did not specify punishment or any other exercise of the court's powers. The plea carried no conditions and was not made in exchange for any promised disposition. The procedural requirements of section 1192.5 were therefore inapplicable, and the Court of Appeal erred in remanding for further inquiry under that statute.

### DISPOSITION

The judgment of the Court of Appeal is affirmed insofar as it affirmed the superior court judgment. Insofar as the Court of Appeal remanded for determination of a factual basis for defendant's admissions, its judgment is reversed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

---

[12]When it appears to the trial court the danger of an involuntary, unintelligent, or inaccurate plea is particularly great—for example, when the defendant maintains his innocence or expresses ambivalence about admitting guilt, or when there is reason to believe the defendant is under unusual extrajudicial pressure to plead—the importance of inquiring into a factual basis is correspondingly high. In addition, some pleas not coming within section 1192.5 may have been at least implicitly negotiated, as when the court provides the defense with an "indicated" sentence. These pleas may present the same danger of false pleading as explicit plea bargains reached under section 1192.5.