[No. C043447. Third Dist. Nov. 30, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY LEE MARLIN, Defendant and Appellant.

## Counsel

Frank G. Prantil for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez, Stephen G. Herndon and Barbara J. Moore, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HULL, J.**—Defendant Terry Lee Marlin entered a negotiated plea of no contest to one count of second degree murder of a fetus (Pen. Code, § 187, subd. (a)—count I; unspecified statutory designations are to the Penal Code), one count of driving with a blood-alcohol content of .08 percent or more with four prior drunk driving convictions causing bodily injury to more than one victim and personally inflicting great bodily injury upon Jeanette A. (Veh. Code, §§ 23153, subd. (b), 23558; Pen. Code § 12022.7, subd. (a)—count III), and one count of driving on a suspended and revoked license with three prior convictions for the same offense (Veh. Code, §§ 14601.2, subd. (a)—count IV). He also admitted an on-bail enhancement (Pen. Code, § 12022.1). Defendant entered his plea in exchange for a stipulated sentence of 15 years to life for count I, concurrent time for counts III and IV and dismissal of the remaining counts (count II, a violation of Veh. Code, § 23153, subd. (a), driving under the influence with priors plus great bodily injury to more than one victim; count V, a violation of Veh. Code, § 14601.5, subd. (a), a misdemeanor; and count VI, a violation of Veh. Code, § 14601.1, subd. (a).) Defendant pleaded no contest to cohabitant abuse, as reduced to a misdemeanor (Pen. Code, § 273.5) in case No. P02CRF0001.

The court sentenced defendant to state prison for 15 years to life for second degree murder and to concurrent terms for the other charges and the enhancement.

Having obtained a certificate of probable cause (§ 1237.5), defendant appeals, raising various contentions that we discuss in turn below. We affirm the judgment.

### Facts and Proceedings

The facts are taken from the transcript of the preliminary hearing, which was adopted by the prosecutor, defense counsel, and the court as the factual basis for the plea.

On the evening on March 19, 2002, defendant, driving a Cadillac on Green Valley Road, drifted onto the right-hand shoulder of the road and then swerved to the left into the path of a car driven by Jeanette A. The Jeanette A. car struck defendant's vehicle broadside. Both Jeanette and her husband Russell A. were injured and their unborn baby was killed. Law enforcement officers found a bottle of Smirnoff Vodka two-thirds empty in defendant's Cadillac. At the hospital, defendant failed the sobriety test and was arrested for drunk driving. A blood sample was taken and, at sentencing, the court observed, without challenge, that defendant's blood-alcohol content was "three times the legal limit."

When she was interviewed by California Highway Patrol Officer Gary Nichols, Jeanette said that defendant's vehicle went "out of control, and then it swerved in front of her vehicle." Russell told the officer something "similar, only he thought that the vehicle—it appeared to him that the vehicle was making a left turn in front of him." The officer confirmed that both Russell and Jeanette said that defendant's car entered their lane and that they collided with it.

Jeanette told the officer that she had been driving 45 miles per hour in a 50-mile-per-hour zone. According to the officer, her statement was consistent with the evidence at the scene. The investigating officer did not perform mathematical speed or tire-mark calculations relating to the accident. There were no tire marks associated with the victim's car.

At the preliminary hearing, the prosecutor submitted documents concerning defendant's driving history and certified copies of defendant's prior convictions for driving under the influence. At sentencing, the prosecutor noted that defendant's driving history included eight convictions for driving under the influence of alcohol.

According to the plea form, the court was to use the preliminary hearing transcript to establish the factual basis for the plea. Defendant initialed the following statement: "I have discussed the charge(s), the facts, and the possible defenses in my case with my lawyer. I have had enough time to discuss my case with him or her. In my discussions with my lawyer I have been truthful and I have stated all the facts and circumstances that are known to me about my case." The stipulated sentence was 15 years to life for count I with the terms for the other offenses as well as the cohabitant abuse charge in case No. P02CRF0001 to run concurrent to the term for second degree murder.

At the entry of the plea hearing, the court again went over the plea agreement. Defendant confirmed he had initialed the plea form, reviewed the

information on the form with his attorney, and understood everything explained on the form. Defendant said he felt the murder charge was "overcharged" and he "would go for manslaughter with the enhancements at hand." The court asked, "I understand you may think that you have a basis for contesting the murder charge, but you are willing to plead as you've indicated here; is that correct?" Defendant answered it was. The court then proceeded to review the plea form with defendant who said he understood and gave up his rights. With respect to the factual basis for the plea, defense counsel stated the parties had agreed to adopt the facts set forth in the preliminary hearing transcript. The court stated that it would read the transcript prior to sentencing "to validate the factual basis for the more serious charges." Defendant then entered his no contest plea to the charges.

At the first sentencing hearing on January 24, 2003, the court stated it had received, but not filed, a copy of what the court described as defendant's "motion to withdraw his plea" and said it had forwarded the document to defendant's attorney because "[defendant] can't act as his own attorney when he has an attorney of record." Defense counsel stated defendant had been in contact with Sacramento area lawyers who, defense counsel believed, had caused defendant to have "some misconceptions." Defense counsel asked for the sentencing to be continued because he had some information for defendant "that may well satisfy his concerns." The court continued sentencing for a week.

At the continued sentencing hearing on January 31, 2003, defense counsel stated defendant was requesting he be allowed to withdraw his plea. The trial court said defendant was required to state sufficient legal grounds to support such a request and his attorney said defendant believed he had received ineffective assistance of counsel. The court also told defendant he had to make his request to withdraw his plea pursuant to a written and noticed motion. Further discussion took place and the trial court asked if the defense attorney was suggesting this was "in the nature of some kind of *Marsden* [*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*)] request" and defense counsel said it was. Thereafter, the court, the defense attorney, and the defendant retired to the judge's chambers to further discuss defendant's request.

In chambers, defendant generally stated his dissatisfaction with the fact his attorney had not undertaken an accident scene investigation focused on the victim's ability to stop her car in order to avoid the accident when defendant came into her lane. His attorney defended his tactics and explained why, in his view, such an investigation would not have aided defendant's case. Defendant's attorney stated however that, even after further investigation into the law, he was "not in favor of withdrawing the plea" because he was

convinced defendant would be convicted as charged. The court told defendant his attorney was "in charge of the tactical decisions in [defendant's] case." The trial judge also said he found no grounds for relieving defendant's attorney as counsel or for allowing defendant to withdraw his plea. The trial court confirmed defendant's attorney was not moving to withdraw the plea.

The parties returned to the courtroom and proceeded with sentencing.

On February 3, 2003, the parties returned to court to correct a clerical error in the sentencing. During the course of this hearing, the trial court again noted defendant's attorney had been retained and, if the court were to construe the earlier discussion in chambers as a request for time to hire a new attorney, the trial court would have denied the request as untimely.

DISCUSSION

I

*The Scope of the Appeal*

At its essence, defendant's appeal depends on three arguments. Defendant says (1) it was error for the trial court to deny his request to withdraw his plea in order to engage an attorney to look into a defense of contributory negligence on the part of the victim (embedding therein a claim that he suffered from ineffective assistance of counsel); (2) the trial court erred in failing to establish a sufficient factual basis for his plea; and (3) his right to due process of law was violated by California's statutory scheme that fails to establish the crime of manslaughter of a fetus. In part, we must determine which of these arguments is cognizable on appeal given defendant's no contest plea.

After sentencing, defendant filed a request for a certificate of probable cause stating that "Penal Code Section 187 (2d degree) is unconstitutionally vague as to its language 'Killing a Fetus' without a definition of a living fetus; and constitutes a denial of equal protection in that Penal Code Section 191.5 (Vehicular Manslaughter) is not available, a lesser included crime, for jury consideration since a fetus is not a human being, within its definition, but would be had the victim been a human being. Stated simply, how does one kill a fetus unless it is alive, and if it is alive, it should be a human being within the definition of Penal Code section 191.5 (Vehicular Manslaughter)." The trial court issued an order finding "probable cause for defendant's appeal exists" and defendant's appeal was "operable." The trial court did not detail the constitutional, jurisdictional or other issues that, in its view, bore on the legality of the proceedings.

Section 1237.5 provides: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of . . . nolo contendere . . . except where both of the following are met:

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

In *People v. Hunter* (2002) 100 Cal.App.4th 37 [122 Cal.Rptr.2d 229], we held the defendant's appeal from the trial court's denial of his motion for discovery relating to an informant who provided information that supported a search warrant was not cognizable on appeal after a plea of guilty, despite the fact the trial court issued a certificate of probable cause. We came to that conclusion because the question of the identity of the informant did not go to the legality of the proceedings, but went instead to the question of defendant's guilt or innocence. We observed the "common thread" in cases asserting error such as the denial of discovery, the voluntariness of extrajudicial statements, the fairness of a pretrial lineup, and a trial court's refusal to disclose the identity of an informant is that each challenges the legality of the evidence-gathering process. If successful, the motions result in the exclusion of evidence and bear, therefore, only on the issue of guilt or innocence. (*Id.* at p. 42.) As such, these issues are not cognizable on appeal following a guilty plea.

A year later, we held denial of a motion to obtain discovery of prison records was cognizable on appeal despite the defendant's plea of guilty because the records were relevant to a claim that the defendant was prosecuted based on his ethnicity, thus denying him equal protection of the law. Since this information could have led to dismissal of the charges against the defendant regardless of his guilt or innocence, the issue was one of constitutional proportion that went to the legality of the proceedings. (*People v. Moore* (2003) 105 Cal.App.4th 94 [129 Cal.Rptr.2d 84].)

■ These cases and others addressing the meaning of the phrase " 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings' " (*People v. Meyer* (1986) 183 Cal.App.3d 1150, 1156 [228 Cal.Rptr. 635]) delineate the boundaries of the concept underlying that phrase. The cases recognize that "[b]y pleading guilty, a defendant admits the sufficiency of the evidence establishing the crime, and is therefore not entitled to a review on the merits. [Citations.] '[Issues] which merely go to the guilt or innocence of a defendant are "removed from consideration" by entry of the

plea.' [Citation.]" (*Id.* at p. 1157.) The existence of a certificate of probable cause cannot widen the scope of review so that it includes noncognizable issues. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178 [43 Cal.Rptr.2d 827, 899 P.2d 896].) With these principles in mind, we turn then to the issues defendant asks us to decide in this appeal.

II

### The Posttrial Applications and Ineffective Assistance of Counsel

As we have said, defendant first argues the trial court erred when it denied his request to withdraw his plea in order to engage an attorney to look into a defense of contributory negligence on the part of the victim. He argues, in part, he was denied the effective assistance of counsel when his attorney refused to investigate and present that defense.

The portion of defendant's argument that asserts contributory negligence was a defense to the charge of second degree murder of a fetus bears directly on the question of defendant's guilt or innocence of that charge. By admitting the charge, defendant waived his right to assert defenses to it. Under the circumstances, defendant's first claim on appeal does not go to the legality of the proceedings within the meaning of section 1237.5 and is not cognizable in this court.

Defendant includes in his argument a claim he received ineffective assistance of counsel for counsel's failure to investigate and present a defense of contributory negligence. Under some circumstances, ineffective assistance of counsel can be a constitutional question going to the legality of the proceedings. (See *In re Brown* (1973) 9 Cal.3d 679, 682 [108 Cal.Rptr. 801, 511 P.2d 1153].) Even so, we doubt defendant's claim of ineffective assistance of counsel goes to the legality of the proceedings under the circumstances presently before us. Defendant's claim is premised on the thought his attorney failed to investigate and present a particular defense to the charge to which he eventually pleaded no contest. The record reflects, however, that defendant had discussed and urged upon his attorney a defense along these lines prior to the time of the plea. He accepted the plea bargain and entered his plea knowing his attorney would not assert the defense on his behalf. By thereafter admitting the offense and waiving defenses to the charge, defendant necessarily waived a claim that his attorney was ineffective for failing to present the defense that defendant thought he might have had. He knowingly gave up that defense in order to take advantage of a plea bargain. He cannot revive it now by claiming his attorney was ineffective for not presenting it.

The above notwithstanding, out of an abundance of caution and in order to avoid, perhaps, a later petition for a writ of habeas corpus, we address the merits of the claim of ineffective assistance of counsel.

In all, defendant's contentions regarding the postplea proceedings and his claim of ineffective assistance of counsel have presented a moving target. The first two arguments in defendant's opening brief asserted the trial court's actions, once defendant stated dissatisfaction with his plea agreement, in some manner violated the California Supreme Court's holding in *Marsden, supra,* 2 Cal.3d 118. By the time of oral argument defendant realized that *Marsden* has no bearing on this matter because defendant's attorney was retained and not appointed. Sensibly, defendant now agrees that, to the extent his arguments depended on *Marsden*, they were in error.

Instead, at the time of oral argument, defendant urged us to decide that, at the point during the postplea discussions when defendant alleged ineffective assistance of counsel, the trial judge was required to advise defendant that the procedural vehicle defendant needed was not a *Marsden* motion but a motion for a continuance in order to retain new counsel. We are confident the trial court did not have that obligation, but even if it did, defendant ultimately could not have prevailed on the motion for the reasons we are about to set forth.

Preliminarily, we might consider defendant's most recent argument (that he should have been advised he needed to make a motion for a continuance) waived because it was not set forth with specificity in his opening brief. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [35 Cal.Rptr.2d 574].) But since, by careful reading of the brief, we can glimpse defendant's fundamental complaint, the matter is best resolved by addressing it fully.

As we understand it, defendant's argument is this: The trial judge should have told defendant the proper procedure for the relief he sought was a motion for a continuance in order to obtain new counsel. And, had defendant known that and had he made that motion, it would necessarily have been granted because he could have demonstrated ineffective assistance of counsel, which would have required the court to allow him to withdraw his earlier plea. Specifically, as discussed above, the assistance he received from his attorney was ineffective because the attorney failed to investigate whether Jeanette A. was speeding at the time of the accident, whether she had time to react to avoid the collision, whether she had room to maneuver around defendant's car, and whether her car experienced brake fade. Had his attorney done that, he argues, defendant would have been able to successfully defend against the charges brought against him.

Defendant's argument depends on a flawed premise, that is, that he was not guilty of a crime because Jeanette A. might have avoided the accident. For that reason, we reject it.

■ It is well established that a crime victim's contributory negligence is not a defense. (*People v. Harris* (1975) 52 Cal.App.3d 419, 426–427 [125 Cal.Rptr. 40]; *People v. Rodgers* (1949) 94 Cal.App.2d 166, 167 [210 P.2d 71]; *People v. Marconi* (1931) 118 Cal.App. 683, 687–688 [5 P.2d 974]; see generally 1 LaFave, Substantive Criminal Law (2d ed. 2003) § 6.5(c), pp. 509–510 (LaFave).) But, defendant counters, the information he sought to develop goes to the fundamental question of causation, that is, whether there was a causal connection between defendant's acts and the victim's injuries. While he is correct that in certain situations the acts or failures of a victim or a third party may negate causation, this is not one of them.

For crimes committed under circumstances such as this, the defendant may only be found guilty if it can be said there is a causal connection between his conduct and the harm suffered by the victim. To establish this causal connection and for criminal liability to attach, the evidence must show that the defendant's conduct was both the actual and the legal, or proximate, cause of the death or injuries. Once that has been shown, the actions or failings of the victims or third parties are of no consequence. (LaFave, *supra*, § 6.4(a), pp. 465–466.)

Professor LaFave explains: "[T]his ordinarily means (1) that the defendant's conduct must be the 'but-for' cause (sometimes called the 'cause in fact') of the forbidden result (the word 'cause' in the phrase 'legal cause' or 'proximate cause'), and in addition (2) that the forbidden result which actually occurs must be enough similar to, and occur in a manner enough similar to, the result or manner . . . which [the defendant's] reckless or negligent conducted created a risk of happening . . . that the defendant may fairly be held responsible for the actual result even though it does differ or happens in a different way from the . . . hazarded result (the word 'legal' or 'proximate' in the phrase 'legal cause' or 'proximate cause')." (LaFave, *supra*, § 6.4(a), p. 466.)

These concepts underlie California criminal law. Thus, pertinent CALJIC instructions defendant would have faced had he gone to trial, based on cases interpreting the concepts we have discussed above, speak to these issues.

Specifically, CALJIC No. 8.55 provides: "To constitute [murder] [or] [manslaughter] there must be, in addition to the death of a human being, an unlawful act which was a cause of that death."

CALJIC No. 3.40 says: "[To constitute the crime of _____ there must be in addition to the (result of the crime) an unlawful [act] [or] [omission] which was a cause of that (result of the crime).]

"The criminal law has its own particular way of defining cause. A cause of the (result of the crime) is an [act] [or] [omission] that sets in motion a chain of events that produces as a direct, natural and probable consequence of the [act] [or] [omission] the (result of the crime) and without which the (result of the crime) would not occur."

Finally, CALJIC No. 3.41 says: "There may be more than one cause of the (result of the crime). When the conduct of two or more persons contributes concurrently as a cause of the (result of the crime), the conduct of each is a cause of the (result of the crime) if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the moment of the (result of the crime) and acted with another cause to produce the (result of the crime).

"[If you find that the defendant's conduct was a cause of (injury, death, etc.) to another person, then it is no defense that the conduct of some other person[, even the [injured][deceased] person,] contributed to the (injury, death, etc.).]"

The question then is whether defendant's actions were both the actual cause and a legal or proximate cause of the injuries (and the death) that were the result of those actions. We hold they were. Even assuming that Jeanette A. was speeding and inattentive and the brakes on her automobile experienced brake fade, it is apparent from this record that the accident would not have occurred but for defendant's losing control of his car due to his intoxication and thereafter driving into Jeanette A.'s lane of traffic. Had he not done so, there would have been no collision. And, there can be no doubt those same actions were a substantial factor that contributed to the accident. This is not a case where defendant's. acts were so remote that Jeanette A.'s actions or failures, had they been established, would have been deemed the sole proximate cause of the collision. (See *People v. Lett* (1947) 77 Cal.App.2d 917, 921 [177 P.2d 47].)

Given the above, defendant's effort to defend against the charges based on Jeanette A.'s actions or failures would necessarily have been in vain. Defendant's claim of ineffective assistance of counsel for counsel's failure to investigate the condition of Jeanette A.'s car and the quality of her driving must fail because his attorney cannot be considered ineffective for refusing to investigate and present a defense that, as a matter of law, was bound to fail.

Because defendant could not have established ineffective assistance of counsel, the trial court would not have abused its discretion in denying a

motion for a continuance made on those grounds. Ultimately, defendant would have gained no benefit from a motion to continue the proceedings to obtain new counsel. Thus, the fact that the trial court did not advise defendant he could make a motion to continue the proceedings to obtain new counsel is of no consequence.

All things considered, there was no error in the court's denial of defendant's postplea applications.

## III

### *The Factual Basis for the Plea*

Defendant next contends no sufficient factual basis supports his plea, requiring the plea be set aside. He claims the preliminary hearing transcript shows at most he was driving under the influence, caused the accident, and an unborn human fetus died as a result, but fails to support a finding of either express or implied malice.

Pursuant to section 1192.5, the trial court is obligated to determine whether there is a factual basis for a plea of guilty or no contest when that plea arises from a negotiated resolution of the charges. (See *People v. Hoffard, supra,* 10 Cal.4th at p. 1182.) Although not constitutionally required (*id.* at p. 1183), such an inquiry furthers constitutional considerations attending a guilty plea (*id.* at p. 1183, fn. 11), protects against the entry of a guilty plea by an innocent defendant, and makes a record in the event of appellate or collateral attacks on that plea. (*Id.* at p. 1183.) Given these significant policy considerations, a failure to make a sufficient inquiry, while not a constitutional or jurisdictional requirement, is one of the "other" grounds going to the legality of the proceedings in the trial court. Even though a defendant may in fact be guilty of the offense to which he pleads guilty, given the policy considerations underlying the intent behind section 1192.5, an adequate inquiry into the factual basis for the plea addresses broader issues such as the voluntariness of the plea and a knowing decision to plead guilty. A sufficient factual inquiry must be considered a necessary component of the legality of the proceedings. To decide otherwise would preclude review of the factual basis for a plea of guilty or no contest thereby frustrating the policies the statute is intended to advance. Thus, defendant's claim that the factual inquiry undertaken here was insufficient is, after issuance of a certificate of probable cause, cognizable on appeal.

Although section 1192.5 requires the trial court to satisfy itself there is a factual basis for the plea, this can be done by having the defendant describe the conduct or answer questions, by detailing a factual basis, or by

having defense counsel stipulate to a particular document such as the transcript of a preliminary hearing as providing a factual basis for a plea. (*People v. Holmes* (2004) 32 Cal.4th 432, 435–436, 442 [9 Cal.Rptr.3d 678, 84 P.3d 366].) The trial court need not obtain an element-by-element factual basis but need only obtain a prima facie factual basis for the plea. (*Id.* at p. 442; *People v. Calderon* (1991) 232 Cal.App.3d 930, 935 [283 Cal.Rptr. 833].) ■ "[A] trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty plea. The trial court's acceptance of the guilty plea, after pursuing an inquiry to satisfy itself that there is a factual basis for the plea, will be reversed only for abuse of discretion." (*Holmes, supra,* at p. 443.)

With respect to the factual basis for this plea, defense counsel stated the parties had agreed to adopt the facts as set forth in the preliminary hearing transcript. The court stated it would read the transcript prior to sentencing "to validate the factual basis for the more serious charges."

■ The factual basis set forth in the preliminary hearing transcript is sufficient. The transcript shows that defendant had been convicted on numerous occasions over the years for driving under the influence of alcohol. Armed with the knowledge of the dangerousness of his conduct, defendant chose once again to drink and drive. "When a defendant commits an act, the natural consequences of which are dangerous to human life, with a conscious disregard for life in general, he acts with implied malice towards those he ends up killing. There is no requirement the defendant specifically know of the existence of each victim." (*People v. Taylor* (2004) 32 Cal.4th 863, 868 [11 Cal.Rptr.3d 510, 86 P.3d 881].) Defendant "demonstrated a conscious disregard for all life, fetal or otherwise, and hence is liable for all deaths caused by his conduct." (*Id.* at p. 870.)

There was no error.

## IV

### *The Lesser Offense of Manslaughter*

Defendant's final argument is that his federal due process rights were violated by California's statutory scheme, which fails to allow for the crime of manslaughter of an unborn human fetus and instead gives the jury an all or nothing choice between convicting for murder or acquitting.

Once again, we must determine whether defendant's guilty plea foreclosed this claim on appeal. We conclude that it does.

■ We have no difficulty deciding that the argument defendant here asserts challenges his guilt of the crime of second degree murder of a fetus. Properly stated, defendant's argument is that he is not guilty of the crime to which he pleaded no contest, he is guilty of some lesser, unlegislated, crime. " 'A guilty plea amounts to an admission of every element of the crime and is the equivalent of a conviction.' [Citation.]" (*People v. Jones* (1995) 10 Cal.4th 1102, 1109 [43 Cal.Rptr.2d 464, 898 P.2d 910].) By his plea, defendant admitted he was guilty of second degree murder of a fetus. His "due process" claim goes to the question of guilt or innocence and is not cognizable on appeal.

DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 2005. Brown, J., did not participate therein.