Filed 8/23/24  P. v. Gomez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>LEONEL PADILLA GOMEZ,<br><br>    Defendant and Appellant. | A169625<br><br>(Sonoma County<br>Super. Ct. No. SCR7538431) |

Leonel Padilla Gomez appeals from a judgment entered pursuant to his plea of no contest to committing four felony sex offenses against Jane Doe, the teenaged daughter of his then fiancée.  (Pen. Code, §§ 287, 289, 261.5.)[1] In accordance with his plea agreement, defendant was sentenced to 14 years in prison, and 42 other charges involving Jane Doe were dismissed. Defendant's appointed appellate counsel has filed a brief that raises no issue for appeal and asks this court for an independent review of the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Having conducted that review, we conclude the appeal must be dismissed because defendant did not obtain a certificate of probable cause.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.  The factual background summarized in this opinion is drawn from the preliminary hearing evidence.

Jane Doe was around 13 when defendant became engaged to Jane's mother and they moved into a home together. After Jane turned 14, her relationship with defendant became "sexual." The first incident Jane recalled started while she and defendant were on the couch watching a football game. They ended up going to the bed defendant shared with Jane's mom, where he asked if Jane wanted to see and touch his penis. She said no, but touched him through his shorts and then he "pulled it out" and "started stroking it himself."

After their first sexual contact, defendant and Jane had conversations about moving forward and what would happen next. Defendant got condoms from the store and went into Jane's room in the morning to have intercourse with her. The first few weeks, this happened every day or every couple of days. Then they started having intercourse at other times and other places in the house. Jane recalled specific occasions and specific acts, including times when defendant choked her and became violent during the "sexual act." Defendant would also have Jane orally copulate him and inserted his finger inside her during sexual encounters. At some point, defendant opened a bank account for Jane and told her he would deposit $200 a month so long as she continued the sexual relationship. Jane also sent nude pictures of herself to defendant so that he would have something to look at when she did not want to have sex with him.

Jane was 15 when her sexual relationship with defendant ended, in February 2022. She had been talking about wanting a boyfriend and when her mom gave her permission, defendant resisted. He became sad and angry that Jane wanted to be with her friends and not him. He imposed conditions on what she could do, and told her she could go live with an aunt, as her mom

would not care.  During one encounter, appellant became angry and aggressive when Jane told him that her mom would not kick her out of the house as that would be "child endangerment," which he took as a threat that Jane would disclose their relationship.  Later, he apologized and said that if Jane did not want him in her life, he " 'would be gone.' "  Crying, he took out a gun and began twirling it and pulling the trigger, then told Jane to go to her room, and everything was fine.  Jane hugged and comforted him before going to her room.

It seemed to Jane that everyone in the house was mad at her, so she finally told her mom what had been going on.  She went to stay with a friend while they decided what to do next.  Eventually, the police were contacted, and as part of their investigation they had Jane call defendant and tell him she was pregnant and talk to him about how that could have happened to her.  Defendant asked Jane what she was talking about, and said he did not feel comfortable talking about the matter over the phone.  He asked if anyone else knew and whether anybody else was around.  After Jane said she was alone defendant asked if somebody else could have gotten her pregnant and suggested she tell people it happened with her boyfriend.  Jane said she had not been with anyone else since being with him, to which he responded that he did not know what she was talking about.  When defendant was subsequently arrested, police recovered his phone, which contained nude pictures that appeared to be of Jane Doe.

On November 16, 2022, the People filed an information charging defendant with committing 42 felony sex offenses against Jane Doe between September 2020 and May 2022.  The People also alleged multiple aggravating factors relating to the crimes and the defendant.  Following his arraignment, defendant's motion to set aside the information pursuant to section 995 was

3

heard and denied on February 27, 2023. Defendant then filed a motion to disqualify the trial judge, which was granted. (Code Civ. Proc., § 170.6.) A jury trial setting conference was continued while the parties pursued discovery and participated in settlement conferences.

On August 18, 2023, the People filed an amended information, adding four charges, as follows. Count 43: oral copulation by threatening to retaliate against Jane Doe and another (§ 287, subd. (c)(3)); Count 44: sexual penetration by foreign object by threatening to retaliate against Jane Doe and another (§ 289, subd. (a)(2)); Count 45: sexual penetration by foreign object against a person under the age of 16 (§ 289, subd. (i)); and Count 46: unlawful sexual intercourse with a minor under the age of 16 (§ 261.5, subd. (d)).

On August 18, 2023, defendant entered a plea of no contest to counts 43 through 46. He also admitted three aggravating circumstances: the victim was vulnerable; the crimes involved planning; and defendant took advantage of a position of trust. (Cal. Rules of Court, rule 4.421(a)(3), (a)(8), (a)(11).) The plea was recorded on an advisement of rights and waiver of plea form, which indicated that defendant's plea was conditioned on receiving a stipulated sentence of 14 years in state prison and that the remaining charges would be dismissed. Defendant waived his right to a preliminary hearing on the amended charges, stated that he was freely and voluntarily waiving his trial rights, and acknowledged the consequences of his plea. The court found, among other things, that defendant voluntarily waived his rights, his plea and admissions were also voluntary, he understood the consequences of his plea and admissions, and there was a factual basis for the plea. Accepting defendant's plea and admissions, the court found him

4

guilty of the offenses he pled to and the enhancement allegations he admitted.

Sentencing was set for October 2023, but was continued to November after defendant waived time. The presentence report contained a summary of inculpatory evidence, which was not limited to preliminary hearing testimony. The report also summarized defendant's September 2023 probation interview. He denied committing any of the charged offenses, opining that the only reason he was in jail was because of an accusation, and that his " 'plea deal isn't an indication of guilt.' " Defendant told the probation officer that he accepted the plea deal because he had been informed that the maximum penalty for the charged offenses was 57 years in prison, and he did not want to risk that longer sentence even though he was not guilty. When the probation officer started to review the events that Jane Doe reported, defendant interjected, " 'I know what the accusations are. I didn't do it. It's a moot point.' " Defendant opined that Jane Doe made false accusations against him because he had been caught in the middle of her toxic relationship with her mother, and stated that Jane constantly lied and got into trouble and eventually, he " 'came down on her' " and kicked her out of the house. He attempted to explain away inculpatory evidence, including text messages he sent to Jane and DNA recovered from Jane's bedding. He claimed that the nude photos and Jane's pretext phone call were used to set him up.

On November 3, 2023, defendant submitted a written statement to the court expressing remorse for his conduct and clarifying statements made during his probation interview. He explained that the reason he told the probation officer that he did not commit the crimes for which he had pled no contest was because he thought he should not discuss details of his case

5

without his attorney present, and because he was trying to distance himself from the acts he committed. Defendant stated that he is guilty of the charges, and he deeply regretted "trying to deny the undeniable." He urged the court not to withdraw his plea because of his probation interview, conveying that he was "genuinely guilty" and fully accepted responsibility for his conduct. Defendant also stated: "I beg the court to proceed with the sentencing, as I believe it is the just and rightful course of action." Defendant did not want to put Jane Doe and her mother through a trial, and was ashamed of what he had done.

Defendant was sentenced on November 16, 2023. Pursuant to the plea agreement, the court imposed an upper term of eight years for oral copulation by future threat, a consecutive midterm of six years for sexual penetration by future threat, a concurrent midterm of two years for sexual penetration with an object, and a concurrent midterm of three years for unlawful sexual intercourse with a person under 16. The balance of the counts in the amended information were dismissed with a *Harvey* waiver. (See *People v. Harvey* (1979) 25 Cal.3d 754.) Defendant was ordered to pay fines and fees and the matter was continued for a restitution hearing.

On December 29, 2023, defendant filed a notice of appeal which states that he is challenging the validity of his plea or admissions and raising claims that require a certificate of probable cause. His notice is accompanied by a request for a certificate of probable cause that was completed and signed by his trial counsel. The request states that it is defendant's "contention" that he was denied the effective assistance of counsel because he "believes" that his trial counsel: (1) failed to conduct a comprehensive investigation of witnesses who "may" have been able to establish that Jane Doe fabricated her accusations; and (2) failed to compel the People to disclose exculpatory

6

evidence that "could" have resulted in a more favorable disposition or dismissal of the charges. The trial court denied the request for a certificate of probable cause on January 5, 2024.

## DISCUSSION

The *Wende* brief filed by defendant's counsel does not draw our attention to any issues under *Anders v. California* (1967) 386 U.S. 738, 744. Defendant was appraised of his right to file a supplemental brief and to request to have his counsel relieved, but he did neither. (*People v. Kelly* (2006) 40 Cal.4th 106, 110.) Following *Wende* guidelines, we conducted an independent review of the record summarized above and conclude there are no meritorious issues to be argued on appeal.

The general rule is that "[i]ssues cognizable on an appeal following a guilty plea are limited to issues based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings' resulting in the plea." (*People v. DeVaughn* (1977) 18 Cal.3d 889, 895.) "The same rule applies after a defendant enters a plea of 'nolo contendere' ('no contest'). [Citation.] ' "In short, a defendant 'cannot admit the sufficiency of the evidence by pleading guilty [or nolo contendere] and then question the evidence by an appeal . . . .' " ' " (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1181.)

Moreover, to appeal a judgment by challenging the legality of a plea, the defendant is required to obtain a certificate of probable cause. (§ 1237.5; *People v. Mendez* (1999) 19 Cal.4th 1084, 1095.) To obtain a certificate, the defendant must file "with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings." (§ 1237.5, subd. (a).) This requirement creates a mechanism for the court to determine whether an appeal raises a nonfrivolous issue that is cognizable on appeal

7

following a plea. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178.) Thus, the written statement need not contain argument or authority but must show reasonable grounds for the appeal. (*People v. Hodges* (2009) 174 Cal.App.4th 1096, 1110.) Here, although defendant's trial counsel signed the written statement under penalty of perjury, he conveyed only a perfunctory claim of ineffective assistance of counsel, without providing specifics and without attesting to its arguable merit.

In any event, the trial court denied defendant's request for a certificate of probable cause, as we have discussed. Denial of a certificate of probable cause may be challenged by filing a writ of mandate, not by proceeding with the appeal. (*People v. Castelan* (1995) 32 Cal.App.4th 1185, 1188; see *People v. Johnson* (2009) 47 Cal.4th 668, 676.) We find no basis for arguing that writ relief should have been pursued under the facts presented here. (Compare with *People v. Richardson* (2021) 65 Cal.App.5th 360, 369 [treating appeal reviewed pursuant to *Wende* as petition for writ of habeas corpus].)

Despite the broad reach of section 1237.5, two types of issues may be raised in an appeal from a judgment entered pursuant to a plea without obtaining a certification of probable cause: " '(1) search and seizure issues for which an appeal is provided under section 1538.5, subdivision (m); and (2) issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed.' " (*People v. Zuniga* (2014) 225 Cal.App.4th 1178, 1182, quoting *People v. Panizzon* (1996) 13 Cal.4th 68, 74–75; see Cal. Rules of Court, rule 8.304(b).) Here, the defendant did not file a motion under section 1538.5 in the trial court. Moreover, when he filed his notice of appeal, he did *not* check the box to indicate that this appeal is based "on the sentence or other matters occurring

after the plea that do not affect the validity of the plea." Nor does the record disclose any such meritorious issue.

Under these circumstances, defendant's failure to obtain a certificate of probable clause requires dismissal of this appeal. (*People v. Stubbs* (1998) 61 Cal.App.4th 243, 245; see *In re Chavez* (2003) 30 Cal.4th 643, 651 [when defendant fails to comply with section 1237.5, court " 'generally may not proceed to the merits of the appeal, but must order dismissal' "]; see also *People v. Espinoza* (2018) 22 Cal.App.5th 794, 802–803; *People v. Brown* (2010) 181 Cal.App.4th 356.)

## DISPOSITION

The appeal is dismissed.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*People v. Gomez* (A169625)

9