Filed 2/19/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES EDWARD TURNER,<br><br>    Defendant and Appellant. | D075788<br><br><br><br>(Super. Ct. No. SCN200740) |

APPEAL from an order of the Superior Court of San Diego County,
Joan P. Weber, Judge. Affirmed.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and
Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General,
A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and
Respondent.

James Edward Turner pleaded guilty in 2007 to voluntary manslaughter (Pen. Code, § 192, subd. (a)) and admitted a gang allegation.[1] While he was serving his 21-year prison term, the Legislature enacted Senate Bill No. 1437 (Senate Bill 1437) (Stats. 2018, ch. 1015) to make certain changes to murder liability under felony-murder and natural-and-probable-consequences theories and provide a procedure for eligible defendants to petition for recall and resentencing. Turner filed a petition pursuant to newly enacted section 1170.95, subdivision (a), but the trial court summarily denied relief on the ground that he was ineligible as someone who "was not convicted of murder." He claims on appeal that section 1170.95 applies to defendants who were charged with murder under a felony-murder or natural-and-probable-consequences theory but pleaded guilty to *manslaughter* to avoid trial.[2]

As we explain, other courts including ours have concluded there is no ambiguity in the plain language of Senate Bill 1437 as to whether a defendant convicted of manslaughter is entitled to relief. Turner relies on language in section 1170.95, subdivision (a)(2) to suggest ambiguity exists. But even if he were correct, the legislative history demonstrates that Turner is not entitled to relief. Because the trial court did not err in summarily denying Turner's petition, we affirm its order.

---

[1]    Further statutory references are to the Penal Code. We continue to refer to the code by name as appropriate for clarity.

[2]    A related question is currently pending Supreme Court review—whether Senate Bill 1437 extends to defendants convicted of *attempted* murder. (See *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted Nov. 13, 2019, S258175 (*Lopez*); *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted Sept. 6, 2019, S258234 (*Munoz*).)

FACTUAL AND PROCEDURAL BACKGROUND[3]

One evening in June 2005, 16-year-old Rusty S. was walking down a street in Oceanside. As he approached a residence, he was confronted by Turner, Turner's cousin Joseph, and Tony L. A physical altercation ensued. As Tony would confess, he pulled out a handgun during the fight and fired shots at Rusty, killing him.

The San Diego County District Attorney charged Tony, Joseph, and Turner with first degree murder. (§ 187, subd. (a).) (See *People v. Medina* (2009) 46 Cal.4th 913, 922, 928 [fatal shooting by fellow gang member was a natural and probable consequence of engaging in a gang fistfight] (*Medina*).)[4] The information also alleged firearm enhancements (§ 12022.53, subds. (b), (c), & (e)(1)) and a gang enhancement (§ 186.22, subd. (b)(1)). Before the case reached trial, the prosecution offered for Turner to plead guilty to voluntary manslaughter and admit the gang allegation in exchange for dismissal of the firearm enhancement allegations.

As Turner would later declare, he accepted the plea deal believing he faced a life sentence if convicted of murder at trial. He pleaded guilty in 2007 to voluntary manslaughter (§ 192, subd. (a)), stipulating that the preliminary hearing transcript

---

[3] Because Turner pleaded guilty and there is no presentence probation report, we draw these facts from a declaration of probable cause filed in support of an arrest warrant for Turner's codefendant and Turner's petition for habeas corpus.

[4] The Supreme Court would later clarify that a person who aids and abets a target crime (such as an assault) that would naturally, probably, and foreseeably result in murder under the natural and probable consequences doctrine can be liable only for *second-degree* murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 166 (*Chiu*).) And, as explained below, Senate Bill 1437 eliminated murder liability altogether in this circumstance.

provided a factual basis for his plea.[5]  Turner further admitted the crime was committed

for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).  Consistent with the

parties' stipulation, the court dismissed the firearm allegations and sentenced Turner to a

prison term of 21 years, consisting of the 11-year upper term for voluntary manslaughter

and the 10-year gang enhancement.

While Turner was serving his sentence, the Legislature passed Senate Bill 1437.

In January 2019, Turner filed a petition pursuant to newly enacted section 1170.95

seeking to vacate his voluntary manslaughter conviction.  The People opposed the

motion, arguing Senate Bill 1437 did not apply to defendants convicted of manslaughter.

In February 2019, the court agreed with the People and summarily denied Turner's

petition on the ground that he did not establish a prima facie case for relief.

Turner filed a petition for writ of habeas corpus in April 2019 challenging the

denial of his recall petition.  We denied relief because the order was appealable.

Thereafter, we granted Turner's motion to reinstate his appeal, deeming his habeas corpus

petition a constructive filing of a notice of appeal.

---

5    The written plea form stated that voluntary manslaughter was an "LIO" or lesser
included offense of the murder charge in count 1.  Provided with a charging document
generically alleging murder and the parties' stipulation to use the preliminary hearing
transcript, we can understand why a judge might not scrutinize whether facts elicited at
that hearing could provide a factual basis for a guilty plea to voluntary manslaughter.
(See *People v. Breverman* (1998) 19 Cal.4th 142, 154 [voluntary manslaughter during a
sudden quarrel or in imperfect self defense "is considered a lesser necessarily included
offense of intentional murder"] (*Breverman*).)

4

DISCUSSION

Turner challenges the trial court's summary denial of his petition. As we explain, a person convicted of manslaughter is not eligible for recall and resentencing pursuant to section 1170.95, and the court did not err in summarily denying relief. This case, perhaps like others in the wake of Senate Bill 1437, underscores the importance of a court's statutory obligation during the plea colloquy to inquire into the factual basis for a conditional plea (§ 1192.5). But the adequacy of the factual basis for Turner's conviction is not before us, and Senate Bill 1437 does not provide an avenue for relief.

1.      *Overview of Senate Bill 1437*

Effective January 1, 2019, Senate Bill 1437 amended murder liability under the felony-murder and natural-and-probable-consequences theories. The bill redefined malice under section 188 to require that the principal acted with malice aforethought. Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Senate Bill 1437 also amended section 189, which defines the degrees of murder, by limiting the scope of first-degree murder liability under a felony-murder theory. (§ 189, subd. (e).)

By adding section 1170.95, the Legislature created a new petitioning procedure for eligible defendants to have their murder convictions vacated and seek resentencing on the remaining counts. "A person convicted of felony murder or murder under a natural and probable consequences theory" may file a petition if all three conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to [Penal Code] Section[s] 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

A petitioning defendant must file a declaration stating that he or she meets the above criteria and requesting appointed counsel. (§ 1170.95, subd. (b)(1)(A).) If the defendant makes a prima facie showing of eligibility, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (§ 1170.95, subds. (c), (d)(1).) At that hearing, the prosecutor bears the burden of proving beyond a reasonable doubt that the petitioner is *ineligible* for resentencing. (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid*.)

2. *Applicability of Senate Bill 1437 to Persons Convicted of Manslaughter*

Turner was charged with Rusty's murder, presumably based on the theory that it was the natural, probable, and foreseeable consequence of the gang assault he joined. (See *Medina*, *supra*, 46 Cal.4th at pp. 922, 928.) In lieu of trial, he agreed to plead guilty to voluntary manslaughter. He could not be charged with murder based on the natural and probable consequences doctrine following enactment of Senate Bill 1437 because

6

malice can no longer be imputed based solely on Turner's participation in a crime. (§ 188, subd. (a)(3).)[6] His petition recited these facts.

Appealing the trial court's summary denial, Turner argues Senate Bill 1437 extends to individuals who *risked* a murder conviction under a theory of felony murder or natural and probable consequences murder but agreed to plead guilty to manslaughter instead. The People disagree, maintaining that Senate Bill 1437 applies exclusively to defendants convicted of murder under one of those theories, and not to defendants like Turner who were convicted of other crimes pursuant to a plea agreement.

Turner's statutory eligibility presents a question of law. We independently consider the scope of Senate Bill 1437 to assess whether it provides relief to a defendant like Turner who was convicted of manslaughter by plea. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71 [de novo review].) As with any question of statutory interpretation, "our primary task is to give effect to the Legislature's intended purpose in enacting the law." (*People v. Hubbard* (2016) 63 Cal.4th 378, 386 (*Hubbard*).) "We begin with the statute's text, assigning the relevant terms their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme. [Citation.] Essential is whether our interpretation, as well as the consequences flowing therefrom, advances the Legislature's intended purpose. [Citation.] Where the statutory text admits of more than one reasonable interpretation, we may consider various extrinsic aids—

---

6     The merger doctrine precludes conviction under a felony murder theory where the underlying felony is assaultive in nature. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.)

including the legislative history—to the extent they are helpful in illuminating that purpose."  (*Ibid.*)

      a.     *Defendants Who Pled Guilty to Voluntary Manslaughter Are Not Entitled to Relief.*

Subdivision (a) of section 1170.95 allows "[a] person convicted of felony murder or murder under a natural and probable consequences theory" to file a petition "to have [his or her] *murder* conviction vacated and to be resentenced on any remaining counts." (Italics added.)  Likewise, section 1170.95, subdivision (d) defines the available relief as the vacating of a "*murder* conviction."  (Italics added.)  As the People suggest, the petitioning prerequisites and available relief indicate that the Legislature intended to limit relief to those convicted of *murder* under a theory of felony murder or natural-and-probable-consequences murder.  Indeed, the Legislature declared in uncodified portions of Senate Bill 1437 that it sought "to amend the felony murder rule and the natural and probable consequences doctrine, *as it relates to murder*," to limit circumstances in which "*murder liability*" may be imposed.  (Stats. 2018, ch.1015, § 1, subd. (f), italics added in both quotes; see *People v. Valencia* (2017) 3 Cal.5th 347, 362 [" 'In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration.' "].)

Relying on the clear language of the statute, courts including ours have concluded that section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter.  (*People v. Cervantes* (Jan. 30, 2020, B298077) __ Cal.App.5th __, 2020 Cal.App. Lexis 76, p. *2 ["The plain language of the statute is explicit; its scope is

limited to murder convictions."], accord, *People v. Flores* (Feb. 3, 2020, D075826) __ Cal.App.5th __, 2020 Cal.App. Lexis 83, p. *9.)  For similar reasons, other courts have rejected claims that the statute extends relief to those convicted of attempted murder.  (*Lopez, supra*, 38 Cal.App.5th at p. 1104, rev. granted; *Munoz, supra*, 39 Cal.App.5th at p. 754, rev. granted; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1015−1016; *People v. Larios* (2019) 42 Cal.App.5th 956, 970.)  These decisions reason that the statutory scheme unequivocally applies only to *murder* convictions.  (E.g., *Cervantes, supra*, Cal.App. Lexis 76, p. *2; *Munoz*, at p. 754.)

Turner reads Senate Bill 1437 to potentially provide relief for defendants convicted of voluntary manslaughter by plea, relying on language in subdivision (a)(2) of section 1170.95 referencing one of the conditions a petitioning defendant must satisfy. Such a defendant must declare that he or she "was convicted of first degree or second degree murder following a trial *or accepted a plea offer* in lieu of a trial at which the petitioner could be convicted of first or second degree murder."  (§ 1170.95, subd. (a)(2), italics added.)  Turner emphasizes that this provision does not expressly require a defendant to have accepted a plea offer for *murder*, but he ignores the introductory language in section 1170.95, subdivision (a) that limits petitions to persons "convicted of . . . *murder*."  (Italics added.)

Moreover, even if Turner were correct that an ambiguity exists, the legislative history demonstrates he is not entitled to relief.  (See also *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [even "if the statutory language is clear and unambiguous," a court may consult legislative history to "determine whether

9

the literal meaning of a statute comports with its purpose"].)  A year before Senate Bill 1437 was enacted, the Legislature passed a resolution highlighting the need for reform "to limit convictions and subsequent sentencing in both felony murder cases and aider and abettor matters prosecuted under [the] 'natural and probable consequences' doctrine." (Sen. Conc. Res. No. 48, Stats. 2017 (2017−2018 Reg. Sess.), res. ch. 175 (Senate Concurrent Resolution 48).)  The "whereas" clauses in Senate Concurrent Resolution 48 noted the harsh sentences for persons convicted of first- and second-degree murder, low rates of parole, and less culpable mental states for liability based on felony murder and natural-and-probable-consequences murder.  (*Ibid.*)  Citing *Medina*, *supra*, 46 Cal.4th 913, which held gang members liable for a fatal shooting by their codefendant during an assault, Senate Concurrent Resolution 48 expressed concern that "individuals lacking the mens rea and culpability for murder [were] being punished as if they were the ones who committed the fatal act."  (Sen. Conc. Res. 48, *supra*.)  With the Assembly concurring, the Senate resolved to consider reforms to calibrate a defendant's punishment to his or her culpability.  (*Ibid.*; see generally, *Lopez*, *supra*, 38 Cal.App.5th at p. 1098, rev. granted [discussing Senate Concurrent Resolution 48].)

In February 2018, Senator Skinner introduced Senate Bill 1437, and the bill proceeded to the Senate Committee on Public Safety.  The associated committee report highlighted lengthy punishments for first- and second-degree murder and referenced the need "to restore proportional responsibility in the application of California's murder statute."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017−2018

Reg. Sess.) as introduced Feb. 16, 2018, pp. 2–3; see Pen. Code, § 190, subd. (a).)[7]  In

providing background on murder liability, the report explained that murder was "the most

egregious form of homicide," required malice, and (critically) was distinguishable from

manslaughter "because the element of 'malice' is required to be convicted of murder."

(Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437, *supra*, p. 4.)

Senate Bill 1437 then proceeded to the Senate Appropriations Committee.  Again,

the associated report distinguished murder from manslaughter "due to the additional

element of malice, which may be express or implied."  (Sen. Com. on Appropriations,

Analysis of Sen. Bill No. 1437 (2017−2018 Reg. Sess.) as introduced Feb. 16, 2018,

p. 2.)  Evaluating the bill's fiscal impact, the report cited "CDCR reports that a snapshot

on December 31, 2017 showed 14,473 inmates were serving a term for the principal

offense of first-degree murder and 7,299 were serving a term for the principal offense of

second-degree murder."  (*Id.* at p. 3.)

With minor amendments, Senate Bill 1437 proceeded to the Senate floor.  A bill

analysis highlighted the lengthy prison terms for first- and second-degree murder.  (Sen.

Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1437

(2017−2018 Reg. Sess.) as amended May 25, 2018, pp. 1−2.)  After clearing the Senate,

the draft bill was sent to the Assembly Committee on Public Safety, whose report

likewise commented on the mandatory life terms for murder.  (Assem. Com. on Public

---

7        Committee reports and bill analyses may be considered as appropriate legislative
history because they "shed light on the collegial view of the Legislature *as a whole*."
(*Kaufman v. Broad Communities*, *Inc. v. Performance Plastering*, *Inc.* (2005) 133
Cal.App.4th 26, 30, 32.)

Safety, Analysis of Sen. Bill No. 1437 (2017−2018 Reg. Sess.) as amended May 25, 2018, pp. 3−4, 5.) Quoting bill proponents, the Public Safety Committee's report suggested reform measures would have to look beyond nonviolent offenders "[t]o meaningfully reduce prison populations and repair the harm of decades of mass incarceration." (*Id.* at p. 7.) Senate Bill 1437 next reached the Assembly Committee on Appropriations, whose report again noted the lengthy prison terms for murder and suggested reform to permit "individuals previously sentenced on a theory of felony murder to petition for resentencing if they meet specified qualifications." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1437 (2017−2018 Reg. Sess.) as amended May 25, 2018, pp. 1−2.)

Amendments were made in the Assembly before Senate Bill 1437 reached a floor vote. Significant for our purposes, the Assembly revised the petitioning procedure now found in section 1170.95, subdivision (a). As passed by the Senate, the introductory clause provided: "A defendant may submit a request to have his or her conviction vacated and petition for resentencing when all of the following conditions apply . . . ." (Sen. Bill No. 1437 (2017−2018 Reg. Sess.) as amended May 25, 2018, § 6.) The Assembly amended this language to its enacted form: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and be resentenced on any remaining counts when all of the following conditions apply . . . ." (Sen. Bill No. 1437 (2017−2018 Reg. Sess.) as amended Aug. 20, 2018, § 4;

12

see Pen. Code, § 1170.95, subd. (a).)  The bill passed the Assembly; the Senate concurred in the Assembly amendments, and Senate Bill 1437 was signed into law.

We draw a few broad points from this detailed history.  First, the Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory.  Second, nearly every committee report and analyses made note of the life sentences imposed for defendants convicted of first- or second-degree murder.  One report based cost estimates on the number of inmates serving terms for first- or second-degree murder.  Finally, the petitioning procedure was *restricted* by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory.  Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95.  The trial court did not err in summarily denying relief.

b.      *No Absurdity Results from This Construction.*

Turner objects that our construction of section 1170.95, subdivision (a) to categorically deny relief to those convicted by plea of manslaughter would create absurd consequences.  "Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent." (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1105.)  But our interpretation does neither.  The uncodified legislative declarations and findings in Senate Bill 1437 make repeated references to "murder," underscoring the need to amend the natural and probable

consequences doctrine "as it relates to murder," but include no references to manslaughter. The petitioning prerequisites and available relief all presuppose a murder conviction. And the legislative history underscores that the Legislature did not intend to extend relief to persons like Turner, who were convicted of manslaughter by plea.

Nor does our construction produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability. The punishment for manslaughter is already less than that imposed for first- or second-degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and 2, 3, or 4 years for involuntary manslaughter permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors. (Pen. Code, § 193, subds. (a)−(b); see *Munoz*, *supra*, 39 Cal.App.5th at pp. 757−758, rev. granted.) Providing relief solely to defendants convicted of *murder* under a felony-murder or natural-and-probable consequences theory does not conflict with the Legislature's stated objective to make "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch.1015, § 1, subd. (b).)

3.    *The Factual Basis Requirement*

Having found that Senate Bill 1437 does not extend to defendants convicted of manslaughter, we acknowledge that in hindsight, Turner would have fared better by pleading guilty to murder. Because his liability would have been premised on Rusty's killing being a natural, probable, and foreseeable consequence of his participation in the assault, he could have petitioned for relief under section 1170.95. Instead he pleaded

14

guilty to voluntary manslaughter, in the process admitting every element of that offense. (See *In re Chavez* (2003) 30 Cal.4th 643, 649.)

A voluntary manslaughter is an intentional and unlawful killing without malice usually based on a sudden quarrel, heat of passion or imperfect self-defense. (*Breverman*, *supra*, 19 Cal.4th at p. 154; see Pen. Code, § 192.)  As the People state, "neither felony-murder nor the natural and probable consequences doctrine are theories on which one can commit voluntary manslaughter."  (See *People v. Price* (2017) 8 Cal.App.5th 409, 430 ["Voluntary manslaughter thus is not a lesser included offense of felony murder"]; *Chiu*, *supra*, 59 Cal.4th at pp. 164−165 [natural and probable consequences doctrine holds aiders and abettors of a target crime liable for nontarget offenses they have *naturally*, *probably*, and *foreseeably* put in motion].)  By admitting voluntary manslaughter, Turner seems worse off for pleading guilty to a crime he likely could not have committed.

If there is a problem, it may lie in the adequacy of the factual basis for Turner's plea.  Before a court can approve a conditional plea of guilty or no contest to a felony, it must "inquir[e] . . . of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea."  (§ 1192.5.)  Whatever method employed, a bare statement that a factual basis exists, without inquiry, is inadequate. (See generally, *People v. Holmes* (2004) 32 Cal.4th 432, 436; *People v. Palmer* (2013) 58 Cal.4th 110, 118 (*Palmer*).)  The factual basis inquiry serves an important purpose:

> "One of the primary reasons an innocent defendant might plead guilty is 'the disparity in punishment between conviction by plea and conviction at trial.' [Citation.]  Such a disparity is particularly likely

15

to be a motivating factor for a plea when the charges expose the defendant to a potentially lengthy term or other severe punishment, and the prosecution offers substantially reduced punishment in exchange for a plea of guilty or no contest. The Legislature could rationally have believed this situation—a negotiated plea—creates an especially high risk the defendant will plead to a crime he or she did not commit and for which no factual basis can be established. Section 1192.5, third paragraph, is designed to protect against that result."

(*People v. Hoffard* (1995) 10 Cal.4th 1170, 1182 (*Hoffard*).)[8]

In the wake of Senate Bill 1437, there may be other cases like Turner's. But defining crimes and prescribing punishment is the Legislature's role. (*In re Lynch* (1972) 8 Cal.3d 410, 414.) And the adequacy of the court's factual basis inquiry is not before us.[9] We are sensitive to Turner's perception that he is in custody "for a crime he did not commit" and to his frustrated expectation that after Senate Bill 1437 "he would get his

---

[8]    Our case illustrates *Hoffard*'s concerns. From all appearances, the prosecution and defense settled on a number—11 years for the homicide charge—and picked voluntary manslaughter as a means to get there. Everyone was satisfied until Senate Bill 1437 created a mechanism to vacate the murder conviction Turner would have otherwise faced.

[9]    There is a split of authority as to whether a guilty plea forecloses an appellate challenge on the ground that the plea lacks a factual basis. (Compare *People v. Voit* (2011) 200 Cal.App.4th 1353, 1365−1366 [not cognizable] with *People v. Marlin* (2004) 124 Cal.App.4th 559, 571 [cognizable]; see *Palmer*, *supra*, 58 Cal.4th at p. 115 ["We need not decide whether *Marlin* or *Voit* states the better view"].) In any event, this appeal is taken from the 2019 postjudgment order, not the 2007 judgment.

16

case heard."  Yet we are constrained to conclude Senate Bill 1437 does not provide him an avenue for relief.[10]

DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

---

[10]    To the extent Turner has a remedy regarding any lack of factual basis, it lies in a petition for writ of habeas corpus, supported by transcripts of the preliminary hearing and plea colloquy.  (See *People v. Jerome* (1984) 160 Cal.App.3d 1087, 1094 & fn. 3 [granting habeas relief based on a lack of factual basis—because it was "legally impossible" for defendant to have committed oral copulation of a minor under 14 as to a 15-year-old victim, "the trial court acted in excess of its jurisdiction when it imposed sentence for that crime"].)