Filed 11/30/23  P. v. Haynes CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KYRON RENA HAYNES,<br><br>    Defendant and Appellant. | B322383<br><br>(Los Angeles County<br>Super. Ct. No. BA465884) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramiro P. Cisneros, Judge.  Remanded with directions.

Bird Rock Law Group, Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

In 2018, Kyron Rena Haynes pleaded no contest to attempted pandering by encouraging. (Pen. Code,[1] §§ 266i, subd. (a)(2), 664.) Pursuant to a negotiated plea, the trial court imposed three years of formal probation with a suspended upper term sentence of three years in prison. Haynes later violated probation, and the three-year upper term sentence was executed. On appeal, Haynes argues that the trial court's refusal to reduce his sentence under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) was error.

We remand for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

In an information filed by the Los Angeles County District Attorney on May 9, 2018, Haynes was charged with pandering by encouraging. (§ 266i, subd. (a)(2).) It was alleged that Haynes suffered a prior serious or violent felony conviction within the meaning of the Three Strikes Law. (§§ 667, subds. (b)–(j), 1170.12.)

A June 5, 2018 presentence probation report recommended that Haynes be convicted as charged and that the high term be imposed. In support of the recommended upper term, the probation report listed five circumstances in aggravation: (1) the manner in which the crime was carried out indicated planning, sophistication, or professionalism; (2) the crime involved a potential threat of great bodily harm or other acts disclosing a high degree of cruelty; (3) Haynes had a growing criminal record

---

[1] All further statutory references are to the Penal Code.

of increasing seriousness; (4) Haynes was on juvenile probation when the crime was committed; and (5) Haynes's prior performance on juvenile probation was unsatisfactory.

On September 11, 2018, Haynes pleaded no contest to attempted pandering by encouraging (§§ 266i, subd. (a)(2), 664),[2] and admitted that he suffered a prior juvenile conviction. The prosecution dismissed the strike allegation per a plea agreement the People had reached with Haynes. Defense counsel stipulated to a factual basis for the plea as reflected in discovery, the pre-plea report, and any preliminary hearing transcript.[3] The trial court sentenced Haynes to three years of formal probation with a suspended sentence of the high term of three years.

On December 16, 2019, the court revoked Haynes's probation. On April 6, 2020, the court conducted a bench warrant hearing, and released Haynes on his own recognizance. On September 10, 2020, the court issued a bench warrant after Haynes failed to appear for a bench warrant hold hearing. On May 19, 2022, Haynes, who had been remanded, failed to appear for the bench warrant hearing without sufficient excuse. The court set the matter for a probation violation hearing.

Haynes filed a sentencing memorandum on June 13, 2022, arguing, as relevant here, that the trial court was prohibited from imposing the high term, and must instead impose the low term due to amendments to section 1170, subdivision (b)(6) made

---

[2] Prior to Haynes's no contest plea the prosecution moved, pursuant to the plea agreement, to amend the information to allege attempted pandering instead of pandering.

[3] Only the June 5, 2018 probation report is contained in the record on appeal.

by Senate Bill 567 because Haynes was a youth (under 26 years of age) at the time he committed the offense, and there was no evidence that imposing the lower term would be contrary to the interests of justice.  Haynes alternatively asserted that the court was required to impose the presumptive middle term under section 1170, subdivision (b)(1) and (2) unless aggravating circumstances supporting a high term were found true by a jury, through a court trial, or stipulated by Haynes.

On June 21, 2022, Haynes waived his right to a probation revocation hearing and admitted the probation violation.

At a sentencing hearing on June 28, 2022, defense counsel informed the court that she had filed the sentencing memorandum stating Haynes's position.  The court acknowledged that it had received and read Haynes's sentencing memorandum.  The court stated that it was aware of Senate Bill 567 and understood that the legislation was retroactive under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  However, the court concluded that Haynes was not entitled to resentencing.  By agreeing to have the upper term suspended in exchange for being placed on probation, Haynes impliedly agreed to the underlying facts supporting the sentence.  Haynes stipulated to the underlying facts as reflected in discovery, the pre-plea hearing, and pre-plea report.  The trial court stated that it also considered Haynes's youth under section 1170, subdivision (b)(6), but found that the same findings rendered him ineligible for the lower term.  The court reasoned, "Defendant agreed to have three years of prison suspended in exchange for being put on probation.  [¶] This was not a case where a judge weighing factors in mitigation and aggravation decided to give the defendant three years suspended which I believe if that occurred in this case defendant

4

would be entitled to a resentencing. That's not the case here." The court ordered executed the previously imposed three-year suspended sentence.

Haynes timely appealed.

## DISCUSSION

In 2018, when Haynes pleaded no contest and the trial court imposed the negotiated upper-term suspended sentence, courts had discretion under former section 1170, subdivision (b) to impose any of the three possible terms in the sentencing triad for attempted pandering. Effective January 1, 2022, Senate Bill 567 amended section 1170, subdivision (b) in two ways that are at issue here.

First, under subdivision (b)(1), "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided. . . ." A sentence exceeding the middle term may be imposed "when there are circumstances in aggravation of the crime that justify the [sentence to be imposed] . . . and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial." (§ 1170, subd. (b)(2).) A trial court may also "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The aggravating circumstance or circumstances that justify imposition of the upper term must be set forth on the record. (§ 1170, subd. (b)(5)).

Second, subdivision (b)(6)(B) provides: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense . . . [¶] . . . [¶] The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense."

Haynes contends that Senate Bill 567, which became effective after his sentence was imposed but before it was executed, applies to his case retroactively, and that the trial court erred by refusing to apply the amendments to section 1170, subdivisions (b)(1) and (b)(2) and (b)(6).

The issue is one of statutory interpretation; our review is de novo. (*People v. Fox* (2023) 90 Cal.App.5th 826, 831 (*Fox*).) " ' " ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " ' " ' [Citation.] ' "In the end, we ' "must select the construction that comports most closely

with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " ' " (*People v. Forester* (2022) 78 Cal.App.5th 447, 453–454.)

Section 1170 is silent as to whether subdivision (b) applies retroactively. Historically, California courts have held that, pursuant to *Estrada, supra,* 63 Cal.2d 740, "(i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date." (*People v. Esquivel* (2021) 11 Cal.5th 671, 675.) " 'The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, "a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." ' " (*People v. Stamps* (2020) 9 Cal.5th 685, 699 (*Stamps*).) We agree with the parties that section 1170, subdivision (b) is ameliorative under *Estrada* and that Haynes's case is nonfinal for *Estrada* purposes. (See *People v. Esquivel, supra,* 11 Cal.5th at p. 680 ["legislation ameliorating punishment presumptively applies to suspended execution cases pending on appeal from an order causing a previously imposed sentence to take effect"].) Although the People concede that Senate Bill 567 is retroactive, they argue that Haynes cannot benefit from the legislation because it does not apply *at all* in the context of a stipulated plea agreement.

7

***Plea Agreements***

"' " " 'A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.' " ' " (*Stamps*, *supra*, 9 Cal.5th at p. 701.)  Unlike civil contracts, " 'as a general rule, plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy.  That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.' (§ 1016.8, subd. (a)(1).)  Therefore, '[a] plea bargain that requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea is not knowing and intelligent.' (§ 1016.8, subd. (a)(4).)" (*People v. Todd* (2023) 88 Cal.App.5th 373, 379 (*Todd*), review granted Apr. 26, 2023, S279154.)  " 'Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.' " (*Stamps*, *supra*, 9 Cal.5th at p. 705.)  The trial court "may evaluate the fairness of a proposed sentence in determining whether to approve the bargain" (*id.* at p. 709), and is "the ultimate arbiter of whether the disposition is fair and appropriate." (*People v. Prudholme* (2023) 14 Cal.5th 961, 970 (*Prudholme*)).

" 'Although a plea agreement does not divest the court of its inherent sentencing discretion, "a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.  [Citation.]" ' " (*Prudholme, supra*, 14 Cal.5th at p. 973.)

"[S]ection 1192.5, subdivision (b) expressly provides that once it approves a plea agreement, 'the court may not proceed as to the plea other than as specified in the plea.' " (*Ibid.*) At that point, the court " ' " 'lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree.' " ' " (*Ibid.*) " ' "Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly." ' " (*Ibid.*) This does not mean that "the court surrenders its sentencing discretion the moment it accepts a negotiated plea." (*Stamps, supra*, 9 Cal.5th at p. 701.) Rather, a court is prohibited " 'from unilaterally modifying the terms of the bargain without affording . . . an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off.' " (*Ibid.*)

"The statutory scheme contemplates that a court may initially indicate its approval of an agreement at the time of the plea but that 'it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter . . . .' (§ 1192.5.)" (*Stamps, supra*, 9 Cal.5th at pp. 705–706.) " '[T]he court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea.' " (*Id.* at p. 706.)

Although the trial court cannot unilaterally modify the terms of the plea agreement (§ 1192.5 (b)), both the Legislature and the electorate " 'for the public good and in furtherance of public policy, and subject to the limitations imposed by the federal and state Constitutions, [have] the authority to modify or invalidate the terms of an agreement.' " (*Stamps, supra*, 9 Cal.5th at p. 703.) "The [Legislature or the] electorate may bind the People to a unilateral change in a sentence without affording

9

them the option to rescind the plea agreement." (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 992; accord *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

*Analysis*

### Section 1170, Subdivision (b)(6)(B)

We need not engage in significant analysis to reach a resolution with respect to Haynes's contention that he is entitled to imposition of the lower term pursuant to section 1170, subdivision (b)(6)(B). Haynes did not argue in his sentencing memorandum to the trial court, at the sentencing hearing, or in his opening brief to this court that his youth "was a *contributing factor* in the commission of the offense," as section 1170, subdivision (b)(6)(B) requires, nor did he offer any evidence that would support a finding that his youth was a contributing factor. (Italics added.) He has simply stated, in a cursory fashion, that he was a youth at the time of the offense. Even if we assume that section 1170, subdivision (b) applies to Haynes's case, given the complete absence of evidence that his youth was a contributing factor in the offense or any argument to support imposition of the lower term under section 1170, subdivision (b)(6)(B), Haynes's claim necessarily fails. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 992 ["in order to trigger the presumption [of the lower term pursuant to section 1170, subdivision (b)(6)(B], there must be some initial showing that the defendant's youth was a contributing factor, and only then must the record affirmatively show compliance with the statute"].)

## Section 1170, Subdivision (b)(1)

*Senate Bill 567's Amendments Apply to Negotiated Plea Agreements*

The Courts of Appeal are divided as to whether a defendant who stipulated to the upper term pursuant to a plea agreement is entitled to remand under Senate Bill 567, and the issue is pending before the Supreme Court. (*Fox*, *supra*, 90 Cal.App.5th at pp. 833–834 [defendant entitled to remand]; *Todd*, *supra*, 88 Cal.App.5th at pp. 381–382 [same]; *People v. Sallee* (2023) 88 Cal.App.5th 330, 340–341 (*Sallee*), review granted Apr. 26, 2023, S278690 [defendant not entitled to remand]; *People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1057–1059 (*Mitchell*), review granted Dec. 14, 2022, S277314 [same].)

The nay-sayers—the Court of Appeal, First District, Division Five in *Mitchell*, *supra*, 83 Cal.App.5th 1051, and the Court of Appeal, Fifth District in *Sallee*, *supra*, 88 Cal.App.5th 330—espouse the view that the plain language of section 1170, subdivision (b)(1) (" 'When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term . . . .' ") limits its application to situations in which the trial court exercises its discretion to select one of three terms in a sentencing triad. (*Sallee*, at p. 337; *Mitchell*, at pp. 1057–1059.) *Mitchell* and *Sallee* followed the rationale of *People v. Brooks* (2020) 58 Cal.App.5th 1099 (*Brooks*), which held that retroactive relief under amended section 1170.91, "which mandate[s] consideration of trauma resulting from military service as a mitigating factor when a court exercises determinate

sentencing triad discretion," is unavailable where a sentence is imposed pursuant to a stipulated plea agreement. (*Sallee*, at p. 338; *Mitchell*, at pp. 1057–1059.) *Mitchell* and *Sallee* reasoned that when a plea agreement is negotiated for a fixed sentence, section 1170, subdivision (b)(1) is not implicated because the trial court has no authority to select the term of imprisonment.[4] (*Sallee*, at p. 338; *Mitchell*, at pp. 1057–1059.) Additionally, *Mitchell* and *Sallee* held that the purposes of Senate Bill 567's amendments—to "ensure ' "that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham v. California* [(2007) 549 U.S. 270]" ' and that ' "individuals facing time have the ample ability to dispute information in the record that might not be true" ' "—are not a concern in the plea context, because the defendant has waived his or her right to a trial. (*Mitchell*, at p. 1059; accord *Sallee*, at p. 340.) *Sallee* further observed that application of section 1170,

---

[4] In their letter briefing, the People distinguish between the posture of this case—where the sentence was imposed prior to the period of probation and executed only after probation was later revoked—and the Court of Appeal cases discussed, in which imposition of the sentence was suspended. When a sentence is imposed but not executed, the court "may revoke the suspension and order that the judgment shall be in full force and effect." (§ 1203.2, subd. (c); *People v. Howard* (1997) 16 Cal.4th 1081, 1087–1088.) The court must order the previously-imposed sentence into effect and has no discretion to modify it. This is a distinction without a difference, however, with respect to the issue of retroactivity presented here. Provisions that operate retroactively, as the amendments to section 1170, subdivisions (b)(1) and (b)(2) do, relate back to the imposition of sentence, regardless of the current stage of the proceedings, as long as the case is not yet final.

subdivisions (b)(1) and (b)(2) to negotiated pleas "would create absurd consequences that do not further or promote the general purpose of the statute." (*Sallee*, at p. 340.) Specifically, a "defendant would be permitted to enter a plea and agree to a stipulated upper-term sentence, while nonetheless asserting a statutory right under section 1170, subdivision (b)(2), to a jury trial on aggravating factors supporting the agreed-upon upper term," thereby eliminating the contractual obligations of the plea agreement. (*Ibid.*)

Subsequent to *Mitchell*, some Courts of Appeal have taken a different view. (*Fox, supra*, 90 Cal.App.5th at pp. 833–834; *Todd, supra*, 88 Cal.App.5th at pp. 381–382.) In *Todd*,[5] the Court of Appeal, Sixth District, observed that unlike the statute in *Brooks, supra*, 58 Cal.App.5th 1099, which permitted recall of sentence if new mitigating factors were not considered at sentencing, "section 1170, subdivision (b) does not merely add additional factors to be considered among many in the trial court's sentencing determination. It prohibits the imposition of the upper-term sentence absent specific findings." (*Todd*, at p. 378.) The *Todd* court expounded: "In *Brooks*, the plea bargain resulted in a sentence that was within the boundaries of the Penal Code's sentencing structure. Here, the imposition of the aggravated term exceeds the court's authority unless the statutory prerequisites are met or waived because the aggravated term cannot be imposed absent the court's finding of those circumstances." (*Id.* at p. 379.)

Additionally, *Todd* reasoned that " 'as a general rule, plea agreements are deemed to incorporate the reserve power of the

---

[5] *Todd*, the first of the cases to disagree with *Mitchell*, was published on the same day as *Sallee*.

13

state to amend the law or enact additional laws for the public good and in pursuance of public policy.  That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.'  (§ 1016.8, subd. (a)(1).)  Therefore, '[a] plea bargain that requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea is not knowing and intelligent.'  (§ 1016.8, subd. (a)(4).)"  (*Todd*, *supra*, 88 Cal.App.5th at p. 379.)

Finally, *Todd* stated:  "The *Mitchell* decision appropriately underscores the primacy of the plea agreement against discretionary judicial interference, other than acceptance or rejection.  [Citation.]  But the relevant question here is not whether the sentencing judge is bound by the parties' stipulated sentence, but whether Todd is entitled to the ameliorative effect of Senate Bill No. 567's new sentencing provisions."  (*Todd*, *supra*, 88 Cal.App.5th  at p. 380.)  Relying on the Supreme Court's decision in *Stamps*, *supra*, 9 Cal.5th 685, where the court held that the defendant was entitled to seek the exercise of the trial court's new discretionary authority to strike an enhancement that was included in the defendant's plea agreement to a stipulated sentence, *Todd* held that the defendant was entitled to the benefits of Senate Bill 567.  (*Id*. at pp. 380–381.)

In *Fox*, *supra*, 90 Cal.App.5th at page 833, the Court of Appeal, First District, Division One, agreed with *Todd* that the Supreme Court's decision in *Stamps* compelled the conclusion that the defendant was entitled to the benefit of Senate Bill 567: "As *Stamps* explained, the fact that a defendant agreed to a

14

specific term prevents a trial court from striking a prior-serious-felony enhancement while imposing the balance of a stipulated sentence, but it does not prevent the court from striking the enhancement and permitting the prosecution to withdraw from the plea agreement.  [Citation.]  This is because a trial court's 'exercise of its new discretion to strike the serious felony enhancement, whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement.' "  (*Id*. at pp. 833–834.)  *Fox* emphasized that remand is even more appropriate in the present context than it was in *Stamps*, because regardless of whether the trial court exercised its discretion in *Stamps* the resulting sentence would be legal, whereas "under Senate Bill No. 567 an upper-term sentence is not even authorized unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt."  (*Id*. at p. 834.)

*Fox* also addressed *Sallee's* conclusion that interpreting the statute in this way would result in "absurd consequences."  (*Fox*, *supra*, 90 Cal.App.5th at p. 834.)  *Fox* explained that there was no danger that a defendant would plead to a stipulated sentence and then assert his or her right to a jury trial on aggravating circumstances—section 1170, subdivision (b)(2) permitted the defendant to stipulate to the aggravating circumstances obviating the need for trial.  (*Ibid*.)  *Fox* rejected the argument that the defendant implicitly agreed to the existence of aggravating factors by agreeing to the upper term; the defendant could not have agreed to the requirements for imposition of the upper term before they existed.  (*Id*. at p. 835.)

We join *Todd* and *Fox* in holding that the amendments to section 1170, subdivisions (b)(1) and (b)(2) apply to stipulated plea agreements, for the reasons set forth in those cases. Moreover, in turning to the words of the statute to divine legislative intent, we note that the plain language of subdivision (b)(1) does not limit its applicability to situations in which the trial court exercises its discretion to *select* a term—the statute applies "[w]hen a judgment of imprisonment *is to be imposed* and the statute specifies three possible terms." (§ 1170, subd. (b)(1), italics added.) The trial court does not *select* a sentence where the parties have negotiated a plea to a fixed term, but the trial court *imposes* the sentence "in its sound discretion" in every case where a disposition is made by negotiated plea. (§ 1170, subd. (b)(1)). As our Supreme Court has stated, " 'a plea agreement does not divest the court of its inherent sentencing discretion.' " (*Prudholme, supra,* 14 Cal.5th at p. 973.) Although the court lacks discretion to unilaterally modify the terms of a plea bargain, it is "the ultimate arbiter," tasked with evaluating the fairness of the bargain. (*Id.* at p. 970.) No plea bargain may go forward without judicial approval. (*Stamps, supra,* 9 Cal.5th at p. 705.) The "sound discretion" referenced in section 1170, subdivision (b)(1) is broad enough to encompass the discretion a court exercises when it determines whether to approve a plea agreement or withdraw approval of a plea it has accepted at sentencing.

Section 1170, subdivision (b)(2) also employs the word "impose" rather than "select" (or some equivalent) when describing the circumstances under which a sentence greater than the middle term may be imposed: "The court may *impose* a sentence exceeding the middle term only when . . . ." (§ 1170,

16

subd. (b)(2), italics added.)  This interpretation of subdivisions (b)(1) and (b)(2) is consistent with section 1192.5, pursuant to which "the trial court is obligated to determine whether there is a factual basis for a plea of guilty or no contest when that plea arises from a negotiated resolution of the charges." (*People v. Marlin* (2004) 124 Cal.App.4th 559, 571; see also *People v. Hoffard* (1995) 10 Cal.4th 1170, 1182.)  "Although not constitutionally required [citation], such an inquiry furthers constitutional considerations attending a guilty plea [citation], protects against the entry of a guilty plea by an innocent defendant, and makes a record in the event of appellate or collateral attacks on that plea." (*People v. Marlin*, at p. 571.)

Even assuming the language of section 1170, subdivision (b) is amenable to more than one interpretation, the purposes behind the enactment of Senate Bill 567 lend further support that it applies to negotiated plea agreements.  The Legislature codified the goals behind the amendments in section 1170, subdivision (a):  "The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice.  When a sentence includes incarceration, this purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances."  We can discern no reason that uniformity and proportionality in sentencing is any less important when sentencing a defendant pursuant to a negotiated plea agreement to achieving these legislative goals than sentencing any other defendant proportionally and uniformly is.

17

Finally, the rationale behind *Estrada* supports application of ameliorative legislation in as many contexts as possible. Although *Estrada* is employed to determine whether a new law was intended to be applied retroactively, the principles behind it are relevant in other contexts as well:  absent an indication to the contrary, " ' "a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." ' " (*Stamps*, *supra*, 9 Cal.5th at p. 699.)  Under the rationale of *Estrada*, we construe the Legislature's intent as extending the benefits of section 1170, subdivisions (b)(1) and (b)(2) to all situations in which a court exercises its discretion to impose a sentence within a sentencing triad.

### *Remand Under* Stamps *Is Appropriate*

Having determined that Senate Bill 567 applies to negotiated plea agreements, we must now decide *how* it is to be applied.  When determining how to apply ameliorative legislation to negotiated plea agreements we look to legislative intent to determine whether the Legislature intended to (1) permit the defendant to seek the benefit of the new legislation on remand but allow the prosecution to withdraw from the plea agreement, or (2) exercise its own authority to change the terms of the existing plea bargain to afford the defendant the benefit of the new legislation while leaving the balance of the agreement intact.

In *Stamps*, *supra*, 9 Cal.5th 685, the Supreme Court addressed how Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393) should be applied to a stipulated plea

18

agreement. (*Id*. at pp. 698–700.) Stamps pleaded to one count of first degree burglary and admitted one serious felony conviction. (*Id*. at p. 693.) His total sentence of nine years included a five-year enhancement imposed pursuant to section 667, subdivision (a). (*Ibid*.) Subsequent to Stamps's sentencing, Senate Bill 1393 amended section 1385 to give trial courts discretion to strike an enhancement imposed pursuant to section 667, subdivision (a); a court had no discretion to strike such an enhancement before the law was amended. (*Ibid*.) Stamps appealed his sentence on the ground that Senate Bill 1393 applied to his case retroactively. (*Ibid*.)

The Supreme Court held that Senate Bill 1393 constituted an ameliorative change and that Stamps's case was not yet final for *Estrada* purposes. (*Stamps*, *supra*, 9 Cal.5th at p. 699.) With respect to remedy, Stamps argued that his case must be remanded to the trial court to permit it to decide whether to strike the five-year enhancement, while otherwise leaving his sentence intact. (*Stamps*, *supra*, 9 Cal.5th at p. 700.) The Supreme Court disagreed. The court explained that the trial court lacked the discretion to unilaterally modify the terms of the plea agreement by striking the enhancement while leaving the remainder of the plea in place. (*Id*. at p. 701.) Although the Legislature was vested with the power to grant trial courts that discretion, the court concluded that it did not intend to do so through the enactment of Senate Bill 1393. (*Id*. at p. 702 [Legislature's "action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification"].)

The Supreme Court distinguished Stamps's case from *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*). There,

19

the Supreme Court reached the opposite conclusion with respect to Proposition 47, which " 'reduced certain nonviolent crimes, including the grand theft from the person conviction in [*Harris*], from felonies to misdemeanors.' " (*Stamps*, *supra*, 9 Cal.5th at p. 702.)  Proposition 47's provisions specifically applied to defendants " 'serving a sentence for a conviction, whether by trial or plea,' " signaling that the electorate intended to extend relief to all eligible defendants.  (*Id.* at p. 703.)  *Harris* reasoned that " '[t]he resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner.' [Citation.]  In such cases, ' "the financial and social benefits of Proposition 47 would not be realized, and the voters' intent and expectations would be frustrated." ' " (*Ibid.*)  *Harris* concluded that, through Proposition 47, the electorate exercised its authority to "bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement."  (*Ibid.*)

*Stamps* then discussed how *Harris* had distinguished the circumstances before it from *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*).  (*Stamps*, *supra*, 9 Cal.5th at p. 703.)  In that case, the Legislature decriminalized the offense to which the defendant had pleaded.  (*Ibid.*)  *Collins* observed that if the defendant could no longer be convicted (other counts were dismissed per the plea bargain) and was no longer vulnerable to imprisonment, the state would be " 'substantially deprived of the benefits for which it agreed to enter the bargain.' " (*Ibid.*)  *Collins* concluded such a result was " 'bounty in excess of that to which [the defendant] is entitled' " that "destroys a fundamental assumption underlying

20

the plea bargain." (*Id*. at pp. 703–704.)  *Collins* invalidated the plea agreement, but held that the People were entitled to reinstate any counts dismissed as a consequence of the bargain. (*Ibid*.)

*Stamps* found the considerations in *Harris* inapplicable. (*Stamps, supra,* 9 Cal.5th at p. 704.)  The court concluded that nothing in the language or history of Senate Bill 1393 suggested that the Legislature intended to overturn the long-standing rule that a trial court may not unilaterally modify the terms of a plea agreement.  (*Ibid*.)  Moreover, allowing a trial court "to strike the serious felony enhancement but otherwise retain the plea bargain, would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the type of enhancement at issue, by granting the court a power it would otherwise lack for any other enhancement."  (*Ibid*.)  Finally, the legislation neither mentioned pleas nor provided a mechanism for relief in the case of a plea agreement.  (*Ibid*.)

*Stamps* concluded that the defendant was entitled to some benefit, however, and held that limited remand was appropriate to permit him to seek the trial court's exercise of its discretion to strike the five-year section 667, subdivision (a) enhancement. (*Stamps, supra,* 9 Cal.5th at p. 707.)  If the trial court declined to exercise its discretion on remand, the plea would stand.  (*Ibid*.)  If the court indicated that it was inclined to exercise its discretion and the People were unwilling to modify the plea to reflect the five-year reduction in sentence, the People had the option of withdrawing from the plea.  (*Ibid*.)  The court could also withdraw its " 'near-plenary' " approval of the plea agreement. (*Id*. at p. 708.)  *Stamps* emphasized that it was the defendant's

21

choice to decide whether to seek relief, in light of the potential consequences to the plea agreement. (*Ibid*.)

After briefing was complete in the present case, the Supreme Court issued its decision in *Prudholme, supra*, 14 Cal.5th 961. We invited the parties to submit additional letter briefing regarding the impact of *Prudholme* on this case, if any. Both parties filed letter briefs in response. Haynes argued that under *Prudholme* this court should permit him to seek the benefit of Senate Bill 567 while leaving the remainder of the plea intact. The People argued that *Prudholme* is inapplicable to this case.

In *Prudholme*, the defendant pleaded to second degree robbery, which is "a wobbler punishable by a prison term of 16, 24, or 36 months, or up to one year in the county jail," in exchange for dismissal of one count of second degree robbery. (*Prudholme, supra*, 14 Cal.5th at p. 964, fn. omitted.) The parties agreed to three years of probation with the condition that Prudholme would serve one year in county jail, which he had already done. (*Ibid*.) Prudholme appealed. While the appeal was pending the Legislature enacted Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950), effective January 1, 2021. (*Ibid*.) Prudholme argued that he was entitled to retroactive application of the new legislation, which amended section 1203.1 to reduce the maximum probation for most felonies, including second degree burglary, to two years. (*Ibid*.) Prudholme argued, as Stamps had, that he was entitled to the benefit of the new legislation while leaving the remainder of his plea agreement intact. (*Ibid*.)

The Supreme Court concluded that the Legislature intended in enacting assembly Bill 1950 to exercise its own authority to change the terms of existing plea bargains to afford

defendants the benefit of the new legislation while leaving the balance of the agreement intact. (*Prudholme*, *supra*, 14 Cal.5th at p. 979.) The court reasoned: "The legislative history of Assembly Bill 1950 reflects a determination by the Legislature that a shorter period of probation would more effectively achieve the rehabilitative goals undergirding probation by concentrating services earlier in the probation cycle when they are predicted to be most effective." (*Id.* at p. 976.) Assembly Bill 1950 "did not reduce the punishment for any particular offense or enhancement. Instead, it reduced the maximum allowable probation term for a wide range of offenses." (*Id.* at p. 979.) The Legislature had rejected "a case-by-case approach" thereby "signal[ling] its view that, for an eligible defendant, a shorter period of probation generally serves the public's interests, regardless of how a conviction was secured." (*Id.* at p. 977.) The court observed that if the prosecution determined that two years of probation was insufficient, its "only recourse would be to require a plea to a more serious offense, making Assembly Bill 1950's two-year probation limit inapplicable, or to seek a prison term. . . . [Doing so] would transform plea bargains for probationary terms into dispositions calling for admission of a more serious offense or a state prison sentence," thwarting the purpose of the legislation. (*Id.* at pp. 977–978.) "Reducing [Prudholme]'s probationary term from three to two years here would not so 'fundamentally alter[ ] the character of the bargain' that the People should have an opportunity to withdraw from the plea agreement." (*Id.* at p. 978.) The court observed that Prudholme had already served his jail sentence and would serve a probation period, though of shorter duration. (*Ibid.*) "Under these circumstances . . . neither the mandates of section 1192.5

nor the *Stamps* remand procedure should apply. The proper remedy here is to modify the judgment to reflect the new probationary term of two years." (*Id*. at p. 979.)

Haynes contends that under the reasoning in *Prudholme*, this court must direct the trial court to resentence him to the default midterm sentence for attempted pandering (two years) under section 1170, subdivisions (b)(1) and (b)(2) without allowing the prosecution the opportunity to withdraw from the plea agreement. Haynes argues that the Legislature's goal of mitigating the effects of mass incarceration applies in all cases; permitting the prosecution to withdraw from fixed plea agreements would undermine that goal. Haynes further asserts that directing the trial court to sentence him to the default midterm sentence would not fundamentally alter the character of the bargain. Haynes would still be subject to a custodial term and the legislative aim of aligning sentencing with the goals of equity, justice, and rehabilitation would be fulfilled.

We agree with the People that that the limited remand described in *Stamps* and applied in *Fox* and *Todd* is the appropriate remedy. Haynes's argument ignores that Senate Bill 567 does not mandate imposition of the midterm in all cases. In cases where aggravating circumstances exist and can be proved in compliance with the statutory standards, imposition of the upper term sentence is still appropriate. Some defendants who pleaded to the upper term will be entitled to the benefits of Senate Bill 567, but in other cases, the court may readily determine that the upper term is justified by the defendant's admissions or prior convictions. Directing the trial court to impose a default midterm sentence where aggravating circumstances are present and adequately proven would thwart

24

the goal of proportional, uniform sentencing. Under these circumstances, the trial court need only state the aggravating circumstances justifying imposition of the upper term for the record, and the plea will stand.

In circumstances where it cannot be readily determined whether aggravating circumstances exist and can be adequately proven, it will still be the case that the upper term is justified in a particular defendant's case. Sentencing these defendants to the midterm without the opportunity for further inquiry would thwart the legislative purpose of Senate Bill 567 as well. Additionally, even where aggravating circumstances do not exist, simply resentencing defendants to the midterm would so " 'fundamentally alter[ ] the character of the bargain' " that the People should be permitted to withdraw from the plea agreement. (*Prudholme, supra,* 14 Cal.5th at p. 978.) The effect of Assembly Bill 1950 was to reduce the probation period for all defendants convicted of certain crimes to two years. The Supreme Court emphasized that although there were certain aspects of probation that imposed burdens on defendants, probation is not traditionally considered punishment. (*Id*. at pp. 978.) The court determined that it did not fundamentally alter the bargain to reduce Prudholme's probation period in part because he had served the full term of imprisonment that he agreed to serve under the plea bargain. (*Id*. at p. 979.) Remand under Senate Bill 567, on the other hand, could result in the reduction of a defendant's term of incarceration. As our colleagues in the Court of Appeal, First District, Division One have stated, the "amendment of section 1170(b) to make the middle term the presumptive term unless aggravating circumstances are proven is a significant legal change" that could impact the fairness of the

25

plea bargain.  (*Fox*, *supra*, 90 Cal.App.5th at p. 834.)  This is true with respect to both parties.  In this case, Haynes's term of imprisonment would be reduced by one third, which is a significant change in the bargain that would " 'fundamentally alter' " the agreement.  (*Prudholme*, at p. 978.)  Accordingly, the People are entitled to the option of withdrawing from the plea agreement if the agreement cannot stand.

As in *Stamps*, in light of the potential consequences to the plea, on remand Haynes may decide whether to seek relief under section 1170, subdivisions (b)(1) and (b)(2).  If Haynes seeks relief, the trial court must determine whether the upper term can be imposed in compliance with section 1170, subdivisions (b)(1) and (b)(2).  If the upper term can lawfully be imposed, the trial court must state the aggravating circumstances supporting the upper term on the record, and the plea will stand.  If the upper term cannot be lawfully imposed, and the parties are unable to reach a modified agreement that the trial court approves, the trial court must withdraw its approval of the plea.

## DISPOSITION

The matter is remanded for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED.


MOOR, J.

I concur:


RUBIN, P. J.

The People v. Kyron Rena Haynes
B322383


BAKER, J., Concurring


I join the majority's analysis and resolution of defendant and appellant Kyron Haynes's (defendant's) Penal Code section 1170, subdivision (b)(6)(B) contention.  As to defendant's Penal Code section 1170, subdivision (b)(1) claim, however, that is an issue our Supreme Court is set to resolve, and our opinions resolving this appeal are unpublished.  I accordingly believe it suffices to state my agreement with the result and disposition in *People v. Fox* (2023) 90 Cal.App.5th 826 without need to join in all the particulars of the majority's Penal Code section 1170, subdivision (b)(1) rationale.


BAKER, J.